*PACIFICORP, dba Utah Power Light Company*
Plaintiff-Appellee/Cross-Appellant
*vs.*
*MOBIL OIL CORPORATION, nka ExxonMobil Corporation*
*Mobil Exploration & Producing U.S.*
Defendants-Appellants/Cross-Appellees

In the Supreme Court of the Navajo Nation

No. SC-CV-27-01

November 24, 2003

R. Dennis Ickes, Esq., Salt Lake City, Utah, Lawrence A. Ruzow, Esq., Window Rock, Arizona, Brent E. Johnson, Esq., Salt Lake City, Utah, for Defendants-Appellants/Cross-Appellees.

Larry Kee, Esq., Tuba City, Arizona, David J. Jordan, Esq., Gordon Campbell, Esq., and David J. Mortensen, Esq., Salt Lake City, Utah, and Larry Echohawk, Esq., Orem, Utah, for Plaintiff-Appellee/Cross-Appellant.

Before YAZZIE, Chief Justice, and FERGUSON, Associate Justice.

Opinion delivered by FERGUSON, Associate Justice.

This case is before us on appeal from the Shiprock District Court's denial of PacifiCorp's motion for summary judgment and granting of its motion to abstain in favor of pending litigation in the United States District Court for the District of Utah. We affirm the district court's decision.

I

Plaintiff-Appellee/Cross-Appellant PacifiCorp is an Oregon corporation with its principal place of business in Oregon. PacifiCorp operates as a regulated public utility in the State of Utah under the business name Utah Power & Light Company. It has entered into agreements with the Navajo Nation and the Bureau of Indian Affairs to allow construction of facilities within the Utah portion of the Navajo Nation. Under these agreements PacifiCorp has distribution and transmission lines, substations, and a switching station located within the Navajo Nation.

PacifiCorp began delivering electricity to customers located within the Navajo Nation in 1959. PacifiCorp does not generate electricity within the Navajo Nation. It delivers electric power to the Aneth, Montezuma Creek, White Mesa, Red Mesa, and Mexican Water communities within the Navajo Nation, to various Navajo governmental entities such as the Aneth Chapter House, the Navajo Housing Authority, and the Navajo Tribal Utility Authority, and to nonmember customers like Defendants-Appellants/Cross-Appellees (collectively "Mobil").

Mobil is licensed by the Navajo Nation to extract oil and gas from the Nation's mineral lands for sale and export. The mineral lands are held in trust by the United States for the benefit of the Navajo Nation. The trust lands are pooled for conservation purposes into two oil and gas units, known as the McElmo Creek Unit and the Ratherford Unit.

Between 1989 and 1998 the parties entered into four contracts for the provision of electricity to Mobil's facilities. Each of the contracts was negotiated and executed outside of the Navajo Nation. Mobil sent payments for its services from Texas to PacifiCorp's offices in Utah. Neither the Navajo Nation nor any member of the Navajo Nation is a party to, has rights or obligations as a third-

party beneficiary under, or is directly affected by any of the four contracts. Now of the four contracts between PacifiCorp and Mobil includes provisions adopting Navajo Nation law as governing or stipulating to Navajo Nation jurisdiction for adjudication of disputes under the contracts.

The Navajo Nation first enacted the Business Activity Tax (BAT) in 1978. 24 N.N.C. §§ 401-445. The Navajo Tax Commission notified PacifiCorp in 1987 that its services were subject to the BAT. PacifiCorp paid the BAT assessments, which had accrued through September 30, 1987, and since that time PacifiCorp has fully paid the BAT assessments. PacifiCorp does not challenge the Navajo Nation's authority to impose the BAT.

The contracts at issue incorporate Utah Electric Service Regulations that allegedly authorize PacifiCorp to pass along the cost of the BAT on a pro rata basis to each customer in its service area.[1] Mobil challenged PacifiCorp's inclusion of the pro rata amount of the BAT as a separately itemized charge in Mobil's electric service bill, and has refused to reimburse PacifiCorp for the BAT. PacifiCorp continued to provide electrical service to Mobil pursuant to the contracts. The meters at which electric service is provided and therefore the locus of the BAT owed by PacifiCorp are within the Navajo Nation at Mobil's facilities.

PacifiCorp sued Mobil in the United States District Court for the District of Utah for $1.8 million in accrued BAT charges based on PacifiCorp's electric service tariff and the Utah electric service regulations incorporated in the contracts. Before answering the complaint, Mobil filed a motion to dismiss on grounds that Navajo law prohibits PacifiCorp from passing along the BAT to its customers or in the alternative asked the court to stay the proceedings pending exhaustion of tribal court remedies. The federal court declined to dismiss, but in the interests of comity the court stayed its proceedings pending a determination from the Navajo Nation of its own jurisdiction.

PacifiCorp then filed a complaint in Shiprock District Court asking for a declaratory ruling that the courts of the Navajo Nation are without subject

---

1 Utah Electric Service Regulation 13, which was in effect during the period from 1987 to 1993 states,

[i]n the event any taxing body shall impose or increase any franchise, occupation, sales, license, excise or other tax or charge of any kind or nature, including taxes or charges based upon meters or customers, or upon electricity sold or the receipts or income there from, the pro rata amount thereof will be added to and as a part of the effective rate, separately itemized and billed to all customers in the area or locality in which such tax or charge applies.

Utah Electric Service Regulation 11, which has been effect since 1993 states,

[i]n the event any Government authority imposes any franchise, occupation, sales, license, excise, business activities, or other tax or charge of any kind or nature, including by not limited to taxes or charges based upon meters or Customers, or the price of or the revenue form electric energy or service sold, the applicable pro rata share of the tax will be separately itemized and billed to all customers in the area or locality in which such tax or charge applies.

matter jurisdiction over PacifiCorp's contract claim. Alternatively, PacifiCorp sought judgment against Mobil for $2,084,455 for breach of contract and violation of the implied covenants of good faith and fair dealing. PacifiCorp asked for summary judgment on jurisdiction, or, in the alternative, that if the court finds there is jurisdiction, that the district court should abstain in favor of the pending federal lawsuit. Mobil disputed some of PacifiCorp's facts and submitted four affidavits alleging that important Navajo interests would be impacted by PacifiCorp's claim against it and that the district court has exclusive jurisdiction to hear the dispute.

The court held that it has concurrent jurisdiction over the suit because both PacifiCorp and Mobil have extensive contacts with the Navajo Nation and because the Navajo Nation is "no stranger to the contracts that are in dispute." The court elected to abstain, however, so the matter could proceed in federal court. The district court noted that the federal forum would not be inconvenient for the parties. Both PacifiCorp and Mobil appeal the decision.

## II

The issues in this case are (1) whether the courts of the Navajo Nation have jurisdiction when a non-Navajo public utility seeks to collect a pro rata charge for the Navajo Business Activity Tax from another non-Navajo corporation receiving electric service on trust land within the Nation, and (2) whether the Shiprock District Court abused its discretion in choosing to abstain.

## III

### A

First we address whether the Navajo Nation courts have subject matter jurisdiction over this dispute. The district court ruled on this question on PacifiCorp's motion for summary judgment. We review the court's decision *de novo. Jensen v. Giant Industries*, 8 Nav. R. 203, 208 (Nav. Sup. Ct. 2002). In this appeal neither Mobil nor PacifiCorp dispute the material facts. PacifiCorp argues that the district court misapplied federal law on subject matter jurisdiction of tribal courts. We disagree.

In their briefs, the parties argue whether PacifiCorp's activities within the Navajo Nation allow jurisdiction under the rule in *Montana v. United States*, 450 U.S. 544 (1981). In *Montana* the United States Supreme Court held that tribes lack jurisdiction over non-Indians on non-Indian owned fee land unless when one of two exceptions exists: (1) when the non-Indian has a "consensual relationship" with the tribe or one of its members, or (2) when the non-Indian's activity "threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." *Id.* at 565-66. PacifiCorp contends that the latest U.S. Supreme Court ruling on tribal jurisdiction, *Nevada v. Hicks*, 533 U.S. 353 (2001), requires fulfillment of one of the two exceptions even where the non-Indian activity occurs on trust or tribally-owned land within the Navajo

Nation. Mobil concedes this point in its response brief.

The district court applied *Montana* directly, concluding that the parties had "consensual relationships" with the Navajo Nation under the first exception.

In a recent case before this Court we held that *Montana* does not apply to non-Indian activity on tribal land. *Nelson v. Pfizer*, 8 Nav. R. 369 (Nav. Sup. Ct. 2003). In that case we stated that the holding of *Hicks* is limited to its facts, as explicitly stated by the U.S. Supreme Court. *Id.* at 376. Consequently, we refused to apply *Montana*, and ruled that subject matter jurisdiction is proper whenever the cause of action arises on tribal land within the Navajo Nation. *Id.* Tribal land includes land held in trust for or owned in fee by the Navajo Nation or its members. *Id.* at 373 n. 1.

*Pfizer* controls this case if the cause of action arises on tribal land within the Navajo Nation. We then must decide whether that requirement is met in this case.

B

PacifiCorp argues that the parties' contracts are outside the jurisdiction of the district court. In this case, parts of the contracts are performed on trust land within the Nation and parts performed off the Navajo Nation. Mobil's performance, payment of the BAT charge and payment for electrical service, occurs off the Navajo Nation. PacifiCorp's performance, provision of the electricity, occurs at Mobil's facilities on trust land within the Navajo Nation. We hold that in situations where a contract has a sufficient nexus to activity on tribal land within the Navajo Nation, the cause of action arises there for purposes of the Navajo Nation's jurisdiction. Our courts will have subject matter jurisdiction, whether or not the contract itself was signed within the Navajo Nation.[2]

The district court correctly concluded it has jurisdiction over this dispute, because there is a sufficient nexus. A significant portion of the performance of the contracts, PacifiCorp's provision of electricity, happened on tribal land within the Navajo Nation. Further, the issue in the case is the BAT, which is charged for services provided at Mobil's facilities on trust land within the Navajo Nation. Under these facts, we conclude there is a sufficient nexus to activity on tribal land to allow jurisdiction. We therefore uphold the district court, though

2 It is immaterial that both parties in this case are non-Indian corporations. Our courts are open to all litigants, *Sells v. Epsil*, 6 Nav. R. 195, 199 (Nav. Sup. Ct. 1990). *Strate v. A-1 Contractors*, 520 U.S. 438 (1997), is not inconsistent with this conclusion, as it held that the *Montana* exceptions were not met, not that jurisdiction was lacking *per se* because neither litigant was a tribal member.

on different grounds.[3]

## IV

The next issue is whether the Shiprock District Court was correct to abstain from hearing the merits of the case. Mobil contends that the district court abused its discretion when it abstained in favor of PacifiCorp's pending action in the United States District Court for the District of Utah.

We give considerable deference to a Navajo district court's exercise of discretion. *Singer v. Nez*, 88 Nav. R. 122, 128 (Nav. Sup. Ct. 2001). Did the district court abuse its discretion? "Discretion" means the discretion to act within certain boundaries of rules, principles and customs applied to facts of the case. *Roughrock Community School v. Navajo Nation*, Nav. R. 313, 317 (Nav. Sup. Ct. 1998); *Whitehorse v. Kayenta Chapter*, 7 Nav. R. 349, 350 (Nav. Sup. Ct. 1998). In other words, a court abuses its discretion by unreasonable conduct that is "capricious and arbitrary." *Roughrock Community School*, 7 Nav. R. at 316. A discretionary ruling is presumptively correct and the party seeking reversal has the burden to show the abuse of discretion. 5 Am. Jur. 2d Appellate Review § 695 (1995).

Abstention occurs when a Navajo Nation court defers to another sovereign's court until that court has had the opportunity to pass on the matter. *Hubbard v. Chinle Sch. Dist.*, 3 Nav. R. 167, 171 (Nav. Ct. App. 1982). The district court abstained from hearing this case in the interests of comity to the federal district court. "Comity" is the courtesy and respect that one court shows another out of good will. *Black's Law Dictionary* 261-62 (7th ed. 1999). A district court's discretion to abstain is not absolute, as the doctrine of comity does not apply unless there is an action properly pending in the courts of another sovereign. *Pela v. Peabody Coal Co.*, 6 Nav. R. 238, 245 (Nav. Sup. Ct. 1990). Also, "considerations of public policy and the protection of individual Navajos in an[ ] effective forum" may preclude a district court from abstaining. *Hubbard*, 3 Nav. R. at 171.

*Hubbard* and *Pela* set the limits of a judge's discretion to abstain: (1) when the action is properly pending in the courts of another sovereign, and (2) when considerations of public policy and the protection of individual Navajos in an effective forum do not require a different outcome. If these conditions are met the district court has discretion to abstain. We will not reverse that ruling unless it is otherwise so unreasonable so as to be capricious and arbitrary.

3 Assuming that *Montana* does apply, we believe the district court was correct in finding jurisdiction. Both parties clearly have "consensual relationships" with the Navajo Nation, including rights-of-way, leases, and/ or permits for their activities. Jurisdiction over the contract dispute has a nexus to those relationships, as required by *Atkinson Trading Post v. Shirley*, 532 U.S. 645, 656 (2001), because the agreements between the parties would not exist without access to tribal land provided by the rights-of-way, leases and permits. Further, whether Mobil or PacifiCorp must pay for the BAT affects the economic viability of their respective operations within the Navajo Nation and therefore whether the parties will continue their relationships with the Navajo Nation for those rights-of-way, leases and permits.

Here the conditions to abstain are met. First, there is an action properly pending in the United States District Court for the District of Utah. Mobil concedes that such court has concurrent jurisdiction because of diversity of citizenship between the parties and the amount in controversy. 28 U.S.C. § 1332. Further, Mobil argues that our courts must hear the claims at hand. Though there is a significant effect on the Navajo Nation's sovereignty, particularly its tax policy, there is no public policy concern that precludes abstention. After reviewing the record we cannot say that the decision was otherwise so unreasonable to be capricious and arbitrary. Consequently, the district court did not abuse its discretion when it abstained in favor of the federal district court.

## V

The Shiprock District Court correctly concluded that it has subject matter jurisdiction over this dispute, though on different grounds. The district court's ruling to abstain in favor of the pending federal case between the parties is not an abuse of discretion. The order of the Shiprock District Court is hereby AFFIRMED.