*Georgianna N. DUNCAN*
Petitioner
*vs.*
*SHIPROCK DISTRICT COURT*
Respondent
*and concerning*
*Green Tree Servicing, LLC*
Real Party in Interest

In the Supreme Court of the Navajo Nation

No. SC-CV-51-04

October 28, 2004

Bernadine Martin, Esq., Gallup, New Mexico, and John Westerman, Esq., Farmington, New Mexico, for Petitioner.

Honorable Raymond Begaye, Shiprock, Navajo Nation, for Respondent.

R. Ruben Gallegos, Esq., Albuquerque, New Mexico, for Real Party in Interest.

Before FERGUSON, Acting Chef Justice, and HOLGATE and J. BENALLY, Associate Justices (by designation).

Opinion delivered by FERGUSON, Acting Chief Justice.

This case concerns the right to a jury trial for counterclaims in a repossession case. We previously issued an alternative writ of mandamus staying the case. We now issue a permanent writ compelling the Shiprock District Court to allow a jury trial on the counterclaims.

## I

The relevant procedural history is as follows. This case began with the filing of Real Party in Interest Green Tree's petition in Shiprock District Court for repossession of a mobile home allegedly owned by Petitioner (Duncan).[1] Duncan filed an answer to the petition, and included counterclaims against Green Tree. Before any merits hearing, Duncan moved for a jury trial on the counterclaims. The court denied the motion, and also denied Duncan's motion for reconsideration. The court then allowed amendments to the pleadings, and Duncan amended her counterclaims. Though unclear in parts, we can identify the following counterclaims from Duncan's answer to Green Tree's amended complaint: 1) wrongful repossession, 2) fraud, 3) intentional and emotional distress, 4) breach of contract, 5) violations of the New Mexico Unfair Trade Practices Act, 6) violation of Navajo Nation consumer protection laws. She seeks money damages for each. After the amendments, Duncan again filed a motion for a jury trial. The court did not rule on the motion.

Failing to get a ruling on her last motion for a jury trial, Duncan filed a petition for a writ of mandamus with this Court. We granted an alternative writ staying the case pending our review. We invited Respondent Shiprock District Court and Green Tree to file responses to the petition within a certain time period. Green Tree filed a timely response. Shiprock District Court filed a response late, and we struck the response as untimely.

## II

The issue in the case is whether a jury trial is allowed for certain counterclaims filed in a repossession case.

## III

Duncan seeks a writ of mandamus against the Shiprock District Court

---

[1] Petitioner disputes that she still has an interest in the mobile home. The truth of that allegation is unnecessary to our decision.

compelling it to hold a jury trial on her counterclaims. We have jurisdiction to issue a writ of mandamus under our authority to issue "any writs or orders [n]ecessary and proper to the complete exercise of [our] jurisdiction." 7 N.N.C. § 303(A).[2] This Court will issue a writ of mandamus against a court to compel a judge to perform a judicial duty required by law, if there is no plain, speedy and adequate remedy at law. *Yellowhorse, Inc, v. Window Rock District Court*, 5 Nav. R. 85, 87 (Nav. Sup. Ct. 1986). The petitioner must show that (1) he or she has a legal right to have the particular act performed; (2) the judge has a legal duty to perform that act; and (3) the judge failed or neglected to perform the act. *Id.* As Duncan has requested a jury trial three times, and the lower court rejected her request twice and has not ruled on the third request, and because a denial of a jury trial is not a final order for which an appeal is available, 4 Am. Jur. 2d Appellate Review § 146 (1995), she clearly has no plain, speedy and adequate remedy at law. The question is whether she has established the other elements for the writ. Here, Duncan argues that the court has a right to a jury trial on her counterclaims, that the court is required to hold a jury trial on those claims, and that the court refused to hold a jury trial.

The Shiprock District Court rejected Duncan's request for a jury trial by relying on this Court's Navajo Rules for Repossession of Personal Property Proceedings (Rules). The court concluded that under the Rules a petition for repossession is a "summary proceeding" for which no jury trial is allowed. Also, the court stated that a jury trial is not allowed because the Rules prohibit counterclaims in a repossession hearing. Under both reasons, the court rejected Duncan's request. As a threshold matter, we discuss the purpose of the Rules and clarify their procedure concerning counterclaims.

A

The Repossession Rules create a streamlined process for creditors to repossess property located on the Navajo Nation. Navajo law prohibits self-help repossession, and to remove property from the Navajo Nation a creditor must get the written approval of the debtor at the time of the repossession or a court order from a Navajo court allowing the repossession. 7 N.N.C. § 621 (as amended by Navajo Nation Council Resolution No. CO-72-03 (October 24, 2003)). The Rules set out the procedure to obtain a court order for repossession. Under the Rules, a creditor files a petition for repossession. Rule 5. The trial court issues an order to show cause, Rule 6, and sets a hearing not less than fourteen days and not more than thirty days after the date the court issues the order. Repossession Rule

2 Green Tree argues that we lack jurisdiction over this petition because Duncan filed it more than thirty days after the denial of her motion for jury trial. Green Tree cites 7 N.N.C. § 801, which requires the filing of a notice of appeal within thirty days of a final judgment or order. However, even assuming the denial of a jury trial is a "final order," *see infra* at 590, Section 801 is inapplicable because a writ is not an appeal, but an original action in this Court. We therefore do have jurisdiction over the petition.

7; *Reservation Business Services v. Albert*, 7 Nav. R. 123, 127 (Nav. Sup. Ct. 1995).[3] The debtor does not need to file an answer to the petition, but can appear at the hearing to give oral "defenses" or "objections" to the petition. Rule 8(a). At the hearing, the court is restricted to considering "whether or not the property is a security under an agreement, and whether or not there has been a breach of the agreement so as to justify repossession." Rule 8(b). The court cannot consider "any counterclaim, setoff or other independent claim" at the hearing. Rule 8(c). If the creditor has proven the case, the court then issues a repossession order. Rule 8(c).

At the outset, we note the difference between a "defense" to the repossession and a "counterclaim," "offset," or "independent claim." As stated above, the Rules allow defenses to a repossession petition, which if shown, defeat the petition and allow the debtor to keep the property. The Rules explicitly identify one type of defense, by requiring the court to apply the terms of a contract unless the terms are "unconscionable or contrary to law." Rule 4. Therefore, if the debtor alleges that a contractual term violates applicable law, the court can prohibit repossession based on the debtor's violation of that term. Defenses are not necessarily limited to this type of claim, but they must defeat a required element justifying repossession, that is, the existence of a security interest or the lack of default under the agreement (such as a mistake on the part of the creditor in recording payments or calculating the amount owed). The Rules contrast this type of claim by the debtor with a "counterclaim, setoff or independent claim." Though undefined by the Rules, a counterclaim must be a separate claim the debtor has against the creditor that does not defeat an element of repossession. This could be a claim for money damages arising out of a completely separate transaction or event between the parties, or, more likely, a claim arising out of the current relationship, but not negating an element of repossession. For instance, a claim that representatives of the creditor defamed the debtor or violated restrictions on methods of collection would not directly defeat an element of repossession, because neither of those claims go to the existence of a security interest or whether the debtor defaulted, but may justify money damages for the debtor.

Though on the surface the difference between a defense and a counterclaim is clear, there are certain counterclaims that indirectly negate the reason for repossession. The most common example is when default is alleged because the debtor failed to make payments. If the debtor has a counterclaim for money damages, and those damages are more than the amount alleged to be due, the creditor would owe money to the debtor, and the defaulted amount essentially would be cancelled out. Though not technically a "defense," this type of counterclaim affects the repossession, in that the debtor likely will argue that

---

3 Though Repossession Rule 7 states that the hearing is set no less than five days and no more than ten days, this Court extended the time period as a matter of due process in *Reservation Business Services*, 7 Nav. R. at 127.

the property should remain with him or her because he or she does not actually owe anything if the court offsets the amount.

The Rules anticipate this possibility. Though the Shiprock District Court is correct that a court cannot *hear* counterclaims at the repossession hearing, the debtor is not barred from *asserting* counterclaims at that hearing. Under the Rules, though the court cannot hear counterclaims at the hearing, their existence affects how the court handles the repossession petition. Rule 9 allows the court to make a "preliminary inquiry" and condition or even delay the repossession based on its assessment of the validity of the counterclaims. If the court believes that there "may" be a valid counterclaim, it can (1) order the property impounded pending a ruling on the counterclaims, (2) allow the repossession if the creditor posts a bond in the amount of the counterclaims, (3) allow the debtor to keep the property if he or she posts a bond in the amount of the property's value or the alleged balance due or, with the creditor's consent, makes monthly payments to the court, or (4) allow the repossession if the creditor submits to the jurisdiction of the court to hear the counterclaims at a later time. The use of "may" clearly places the decision whether or not to condition the repossession through one the four alternatives in the sound discretion of the district court. Through this process, the interests of both the creditor seeking repossession for non-payment and the debtor alleging damages that offset the amount due are protected.

Based on this discussion, the Shiprock District Court erred. The court is correct that the repossession hearing is a "summary proceeding," in that only the right to repossession is considered. However, that counterclaims cannot be heard at the repossession hearing says nothing about whether a jury trial must be held when the counterclaims are asserted and heard at a later proceeding. Petitioner did not request a jury trial for the repossession hearing itself, but sought a jury trial when the court hears the counterclaims. The court stated true propositions, but did not answer the real question of whether a jury trial is required at the counterclaims hearing. We turn to that question now.

B

The right to a jury trial is recognized by the Navajo Bill of Rights. 1 N.N.C. § 7 (1995). That section states that "[n]o person accused of an offense punishable by imprisonment and no party to a civil action at law, as provided under 7 NNC §651 shall be denied the right, upon request, to a trial by jury of not less than six (6) persons."[4] A Section 651 of Title 7 in turn states that "[i]n any . . . civil case,

---

4 The first part of this provision concerning the right to a jury trial in criminal cases, which is not at issue here, is the same as the equivalent right in the Indian Civil Rights Act (ICRA). *See* 25 U.S.C. § 1302(10). Importantly, the right to a jury trial in a civil case in our Bill of Rights does not appear in the ICRA provision. Our Bill of Rights recognizes a greater right than that granted by federal law, and, therefore, we do not need to consider federal interpretations of the Indian Civil Rights Act on this issue.

but not in any domestic relations, decedent's estate, equitable proceeding, or miscellaneous case, as set out in 7 N.N.C. § 253, any party shall, upon demand, be entitled to jury trial on any issue of fact." As this is not a domestic relations or probate case, there must be a jury trial on Petitioner's counterclaims unless they trigger an "equitable proceeding" or a "miscellaneous case," as that term is used in 7 N.N.C. § 253. We consider each type of proceeding in turn.

C

Under the plain language, the term "equitable proceeding" in Section 253 refers to cases that arise under the Anglo-American legal concept of "equity" as opposed to "law." This is consistent with the Navajo Bill of Rights provision, which ties the right to a jury trial to a civil action "at law." 1 N.N.C. § 7. The provision also is similar, but not identical, to the Seventh Amendment of the United States Constitution, see *infra* 591, n. 5, which states that "[i]n Suits at common law . . . the right of trial by jury shall be preserved." The distinction between "law" and "equity" arises from the unique historical development of the Anglo-American legal system. That system previously divided dispute resolution between courts of law and courts of equity. 27A Am. Jur. 2d *Equity* § 3 (1996). Courts of law were bound by the strict and consistent application of rules. 27A Am. Jur. 2d § 2 (1996). Where the rules controlling courts of law were considered too harsh or where a party could not receive an adequate legal remedy, the courts of equity fashioned their own flexible remedies based on considerations of fairness and justice. 27A Am. Jur. 2d *Equity* §§ 2, 4 (1996). The federal courts and most state courts have eliminated the distinction between courts of law and equity, and their courts now grant both legal and equitable relief. 27A Am. Jur. 2d *Equity* § 4 (1996). Our Navajo district courts also award both legal and equitable remedies. *See Benally v. John*, 4 Nav. R. 39, 44 (Nav. Ct. App. 1983). However, the distinction remains in many jurisdictions when a party seeks a jury trial. 27A Am. Jur. 2d Equity § 234 (1996); 47 Am. Jur. 2d *Jury* §§ 32-34 (1996).

In this case Duncan is not prohibited from a jury trial, as the counterclaims do not trigger an "equitable proceeding." An "equitable proceeding" is one in which the plaintiff seeks an equitable remedy. 27A Am. Jur.2d *Equity* § 5 (1996) ("Courts of equity act on equitable causes by the administration of equitable

remedies.")[5] Under the Anglo American theory of "law" and "equity," claims seeking money damages generally are "law" claims, and therefore do not trigger "equitable proceedings." *See Chauffers, Teamsters and Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 570 (1990); *Curtis v. Loether*, 415 U.S. 189, 194 (1974) (recognizing right to jury trial under Seventh Amendment when legal rights and remedies are "enforceable in an action for damages in the ordinary courts of law."). Though some of Petitioner's counterclaims are common law claims (those alleging breach of contract and intentional or negligent emotional distress), and some are statutory claims (the New Mexico and Navajo consumer protection statutory claims), Petitioner seeks money damages under all her counterclaims, and therefore does not seek equitable remedies in an "equitable proceeding." *Id.*[6] The only remaining issue is then whether the counterclaims trigger a "miscellaneous case."

## D

To define "miscellaneous" we look to Section 253 of Title 7. The purpose of Section 253 is to define the scope of subject matter jurisdiction for the district and family courts. That section includes "miscellaneous" as one of several categories of cases within the jurisdiction of the Navajo Nation district courts. The Section is broken up into three separate categories: (1) criminal cases, (2) civil cases, and (3) miscellaneous cases. The first sentence of Section 253(A)(3) defines "miscellaneous" as "[all other matters provided by Navajo Nation statutory law, *Diné bi beenahaz'áánii*, and Navajo Nation Treaties with the United States of America or other governments." However, the second sentence goes on to include

5  By adopting this test, we intentionally deviate from the United States Supreme Court's approach to the Seventh Amendment right to a jury trial. As stated above, the Seventh Amendment states that "[i]n Suits at common law . . . the right of trial by jury shall be preserved." The United States Supreme Court interprets the "preserved" language in the Seventh Amendment to protect the right to a jury trial as it existed in English law in 1791, the year of the ratification of the Constitution. *Baltimore & Carolina Line, Inc. v. Redman*, 295 U.S. 654, 657 (1935). Under this interpretation, the Court applies an "historical test." It decides whether the cause of action, or in the case of a statutorily created claim, an analogous cause of action, was tried in a court of law, and not in a court of equity, under English law in 1791. *Granfinaciera, SA. v. Nordberg*, 492 U.S. 33, 42 (1989). The Court further considers whether the relief requested is legal or equitable. *Id.* As the historical aspect of this test reflects the specific text of the U.S. Constitution, which is different from our own in our Bill of Rights, it is unsuited to an interpretation of our Navajo right to a jury trial. We read the plain language of "equitable proceeding" to refer to the remedy requested, similar to the second part of the U.S. Supreme Court test, and not to require an analysis of historical causes of action in English law in 1791.

6  The U.S. Supreme Court, though generally recognizing money damages relief as "legal" has identified several exceptions that make a monetary remedy "equitable." *Terry*, 494 U.S. 558, 570. These include actions seeking disgorgement of profits and monetary relief "incidental to or intertwined with injunctive relief." *Id.* Neither exception is met in this case, and therefore our conclusion that a money damages remedy generally is a "legal" remedy controls.

"[a]ll causes of action recognized in law, including general principles of American law applicable to courts of general jurisdiction." *Id.*

The definition of "miscellaneous" makes no sense in connection to Section 651. While the first sentence creates a category of cases separate from criminal cases and, apparently, a certain subset of civil cases, the second sentence hopelessly confuses the reader. The second sentence extends the term "miscellaneous" to "all causes of action recognized in law," and therefore destroys any separateness from the other two categories by including every possible claim or cause of action. The term "miscellaneous" then loses any meaning as a specific type of case for which jury trials are prohibited when the statute defines the term to include all possible causes of action.

This problem only emerged with the recent 2003 amendments to Title 7. The previous version of Title 7 defined "miscellaneous" as "[a]ll other matters over which jurisdiction has been heretofore, vested in the 'Navajo Tribal Court of Indian Offenses,' or which may hereafter be placed within the jurisdiction of the District Courts by the Navajo Nation Council." 7 N.N.C. § 253(C) (1995). The second sentence did not exist. The previous language of section 253(C) defined a certain type of case, different than criminal and some subset of civil cases, and therefore can be read together with Section 651 to exclude these types of cases from the jury trial requirement. The amended language severs the connection between the two statutes. Therefore, we cannot now rely on Section 253 to define "miscellaneous" in Section 651. The question is then what "miscellaneous" means in the absence of any guidance by the Navajo Nation Council.

We recently clarified our approach to interpreting ambiguous language in Navajo statutes. In *Tso v. Navajo Housing Authority*, we stated that we will apply the plain language of statutes when that language is clear, but that we will follow the mandate of the Navajo Nation Council and use *Diyin Nohookáá' Dine'é Bi Beehaz'áanii* (Navajo Common Law) to interpret ambiguities. 8 Nav. R. 548, 557 n. 1 (Nav. Sup. Ct. 2004). Here, the term "miscellaneous" is ambiguous. As we have done before, we must interpret ambiguous statutory language in the context of a fundamental right consistent with *Diyin Nohookáá' Dine'é Bi Beehaz'áanii. See Fort Defiance Housing Corp. v. Lowe*, 8 Nav. R. 463, 475 (Nav. Sup. Ct. 2004).

A jury trial in our Navajo legal system is a modern manifestation of consensus-based resolution our people have used throughout our history to bring people in dispute back into harmony. Juries are a part of the fundamental Navajo principle of participatory democracy where people come together to resolve issues by "talking things out." *Downey v. Bigman*, 7 Nav. R. 176, 177-178 (Nav. Sup. Ct. 1995). Through this process community members in disharmony are brought back into a state of *hózhǫ́. See Navajo Nation v. Blake*, 7 Nav. R. 233, 234 (Nav. Sup. Ct. 1996) (discussing purpose of dispute resolution as bringing persons back into *hózhǫ́* in the context of resolving criminal matters). The participation

of the community in resolving disputes between parties is a deeply-seeded part of our collective identity and central to our ways of government. As such, we must apply restrictions on the right to a jury trial narrowly, as they turn us away from our traditional ways of dealing with disharmony. Given the importance of juries, we will interpret Section 651 to restrict the right to a jury only when such restrictions are clear. Only if the Navajo Nation Council found it absolutely necessary, and clearly articulated the types of case it deemed it necessary to restrict the right to a jury trial, will we deny that right to a litigant who requests it.

Here, the term "miscellaneous" is not clearly articulated, and therefore cannot restrict the right to a jury trial. We will not give meaning to this term when the Navajo Nation Council did not define it clearly. We do not do justice or properly protect our identity as a people otherwise. Absent a clearly articulated definition of "miscellaneous" the default right to a jury trial under Navajo Common Law survives.

## IV

Based on the above, we conclude that Duncan is entitled to a jury trial on her counterclaims. We make the writ of mandamus permanent, and order the Shiprock District Court to hold a jury trial on the counterclaims. We leave the procedural aspects of holding such a trial to the sound discretion of the district court.