OPINION

This matter comes before the Court on Appellant Glenyal Bahe’s appeal from an order of the Crownpoint Family Court denying Appellant’s Motion for New Trial and to Amend or Alter Judgment. In its order, the family court affirmed its earlier dismissal of Appellant’s paternity, child custody and support action in deference to the jurisdiction of a New Mexico state court, where Appellee had previously filed a competing action. For the reasons set forth below, we affirm the family court’s decision.
I
The parties are both enrolled Navajos. They are unmarried. Neither party disputes that Appellee is the father of the parties’ two sons, ages three and five. The parties lived together in Torreón, New Mexico on the Navajo Nation between 2006 and 2010, then moved with their sons to Albuquerque, New Mexico. Sometime in 2011, the parties separated. At some point in 2011, their sons, either with Appellant or by themselves, began living in the residence of their maternal grandmother in Torreón. The parties dispute when this move occurred.[1]
On December 2, 2011, Appellee filed a Petition to Establish Parentage, Determine Custody and Time-Sharing, and Assess Child Support in the Second Judicial District Court, Bernalillo County, New Mexico, requesting joint legal custody, with physical custody to the mother and visitation for himself. Appellant was served with the petition on January 18, 2012. On January 31, 2012, Appellant filed a competing Petition to Establish Paternity, Custody and Child Support in the Crownpoint Family Court of the Navajo Nation requesting sole legal and physical custody of the children with limited visitation to the father.
On the basis of her Crownpoint filing, Appellant moved to dismiss the Bernalillo County, New Mexico action. At a hearing on the motion held on May 8, 2012, the state judge took testimony on the children’s residence. Shortly thereafter, the judge communicated with the Crownpoint Family Court judge pursuant to the Uniform Child-Custody Jurisdiction and Enforcement Act (UCCJEA) at § 40-10A-110 NMSA (1978). Following this communication, the Crownpoint court dismissed the Crownpoint action on May 14, 2012, deferring jurisdiction to the state court on the basis that “judicial resources will be preserved, forum shopping will be discouraged, the children will benefit and the matter will [be] resolved in the most convenient forum.” Order of Dismissal, p. 2. On the sole basis of the Crownpoint court’s sua sponte dismissal of that action, on May 15, 2012, the state court denied Appellant’s *106 motion to dismiss the action in the state court.
On June 4, 2012, Appellant filed her Motion for New Trial and to Amend and Alter Judgment in the Crownpoint Family Court, asserting that the state court lacked proper jurisdiction under the UC-CJEA because the children had moved to the residence of their maternal grandmother in Torreon in February, 2011 and were, therefore, not in the state of New Mexico for the required length of time for the state to acquire “home state” jurisdiction under the UCCJEA. The Crownpoint court accepted the post-judgment motion and ordered the parties to submit additional briefing on the jurisdictional issue. Both parties submitted briefs. On July 11, 2012, the Crownpoint court denied Appellant’s motion on the basis of the court’s discretion under PacifiCorp v. Mobil Oil Corporation, 8 Nav. R. 378, 4 Am. Tribal Law 694 (Nav.Sup.Ct.2003) to abstain from hearing a case that is properly pending in another jurisdiction unless public policy considerations dictate otherwise.
This appeal followed. The Court granted a Motion for Expedited Ruling filed by Appellant. Briefs were submitted on an expedited schedule. Appellant filed further motions, first for a decision on the record and second, to strike Appellee’s brief with fees and sanctions on two bases, namely (1) the brief was submitted a few days past the expedited deadline, and (2) Appellee’s counsel had submitted the brief without being duly licensed to practice law on the Navajo Nation. On December 4, 2012, the Court granted Appellant’s motion for a decision on the record but denied Appellant’s second motion regarding Ap-pellee’s counsel’s late and unauthorized submission of brief, on several bases, including fundamental fairness and Appellant’s failing to raise the matter of unauthorized practice before briefs had been submitted in compliance with court orders that, from the beginning, were addressed to both parties’ counsel of record. Meanwhile, the state court action has proceeded forward with the state judge referring the parties’ paternity, custody and support matters for evaluation by a court clinic and mediation.
We now issue our opinion.
II
The issue in this appeal is whether the Crownpoint Family Court abused its discretion by dismissing a privately-filed child custody matter concerning Navajo parents and Navajo children in deference to a state court in which an earlier petition in the same matter had been filed.
III
We review the nature of state and tribal jurisdiction over privately filed child custody matters de novo as a legal question. In re A.M.K., 9 Am. Tribal Law 191 (Nav.Sup.Ct.2010) citing Green Tree Servicing, LLC v. Duncan, 7 Am. Tribal Law 633 (Nav.Sup.Ct.2008) and Navajo Transport, Services v. Schroeder, 7 Am. Tribal Law 516 (Nav.Sup.Ct.2007). We review the family court’s decision on abstention for abuse of discretion. Discretion is limited by legal principles and must be exercised in conformity with the spirit of the law and adopted rules, to serve the ends of justice. Sheppard v. Dayzie, 8 Nav. R. 430, 484, 5 Am. Tribal Law 374 (Nav.Sup.Ct.2004).
IV
We take judicial notice that Navajos live both on the Navajo Nation and throughout the United States, where they are raising families in communities outside the land of our forefathers. Navajo individuals and families may move across bor *107 ders for jobs or relationships or to return to their extended families. All these reasons are apparent in this case, where the breakup of one Navajo family living for a time outside the reservation has resulted in state-tribal jurisdictional challenges. While most jurisdictional issues in child custody matters presented to this Court have involved a Navajo and non-Navajo parent, here both parents and their children are all tribal members.
We note that in this case, the record shows no findings to our satisfaction as to the residence of the mother during the pendency of her child custody petition, while the mother insisted that the children resided with her. Therefore, we will assume that not all the parties resided on the Navajo Nation, and that events relevant to the matter appealed may well have occurred outside the Navajo Nation.
The Navajo Nation has codified its extraterritorial jurisdiction under the 2001 Navajo Nation Long-Arm Civil Jurisdiction and Service of Process Act (Long-Arm Statute) at 7 N.N.C. § 253a. Pursuant to Section 253a(B), the Nation has jurisdiction over tribal members based on conduct and status if another tribal member is affected by their activities outside our jurisdiction. Additionally, Section 253a(F) provides that our courts “may exercise jurisdiction on any other basis authorized by law, including the inherent and treaty jurisdiction of the Navajo Nation.” We have previously stated that our courts have jurisdiction over our children wherever they may reside. Miles v. Chinle Family Court, 7 Am. Tribal Law 608, 612-13 (Nav.Sup.Ct.2008). Section 253a(F) serves as the statutory foundation for Navajo Nation jurisdiction over our children based on their status as tribal members alone.
Jurisdiction over matters concerning our children who live outside the reservation is provided by 7 N.N.C. § 253a(F) as arising from our inherent sovereign right to watch over the upbringing of tribal children as a matter of the health, safety and welfare of the Nation as a whole. Congress has expressed that “there is no resource that is more vital to the continued existence and integrity of Indian tribes than their children.” 25 U.S.C. § 1901(3). The Navajo Nation has a “legitimate and compelling interest” in the welfare of our children within our jurisdiction. Resolution CO-38-11, Section 2(1) (October 26, 2011). Our courts’ jurisdiction over matters involving Navajo children wherever they may reside is, furthermore, in keeping with Dine bi beena-haz’áanii, which teaches that our children occupy a space in Navajo culture that can best be described as holy or sacred. See EXC v. Kayenta District Court, 9 Am. Tribal Law 176, 187-88 (Nav.Sup.Ct.2010). Federal law recognizes that reservation status is not a requirement of tribal jurisdiction because “[a] Tribe’s authority over its reservation or Indian country is incidental to its authority over its members.” Kaltag Tribal Council v. Jackson, 344 Fed.Appx. 324 (9th Cir.2009) Otherwise, federal law fully recognizes undiminished inherent tribal sovereignty in matters “involving relations between tribal members.” See, e.g., Montana v. United States, 450 U.S. 544, 564, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981) (“Indian tribes retain their inherent power ... to regulate domestic relations among members”). New Mexico, in particular, has long acknowledged exclusive tribal jurisdiction over civil matters, where both parties are Indian because those actions are “first and foremost a matter of internal tribal law.” Hinkle v. Abeita, 2012-NMCA-074, 283 P.3d 877, 883, cert. denied, 2012-NMCERT-006, 294 P.3d 1243 (2012) citing Felix S. Cohen, Cohen’s Handbook of Federal Indian Law § 7.02[1][a], at 599 (Nell Jessup Newton ed. 2005).[2]
*108 The Navajo Nation Council has provided our eourts with exclusive subject matter jurisdiction over matters covered by this appeal. The family courts have “original exclusive jurisdiction” over all cases involving domestic relations, paternity, custody and child support. 7 N.N.C. § 253(B) (emphasis added). That the Navajo Nation Council saw fit to term such jurisdiction “exclusive” in a general jurisdiction statute leads this Court to conclude that the Council wished to assert our inherent powers in such matters above all other forums in this or any other jurisdiction, unless the Council adopts a uniform jurisdictional law, enters a jurisdiction sharing agreement with an outside forum, or more specific jurisdictional provisions in the Navajo Nation Code set forth otherwise.[3]
Jurisdiction over child custody matters in New Mexico is determined under the UCCJEA, NMSA 1978, § 40-10A-101 et seq. (2001). According to some commentators, the UCCJEA confers subject matter and personal jurisdiction while also operating substantially like a long arm statute, providing jurisdiction over child custody matters that may not satisfy residency requirements for personal jurisdiction which might otherwise be required in a particular state.[4] The UCCJEA as adopted by New Mexico establishes four bases for initial jurisdiction over child custody matters— home state, significant connection, more appropriate forum, and vacuum jurisdiction. § 40—10A—201 (a)( 1)—(4) NMSA. To be the “home state” the court must find that a child is either present in the state, or was present within six months of the proceedings’ commencement and one of the child’s parents continues to live in the state even after the child has been removed. § 40-10A-201(a)(l). If there is no home state or if the home state has declined jurisdiction, then a court has jurisdiction if the child has “significant connection” to the state and substantial evidence concerning the child is available in the state. § 40-10A-201 (a)(2). A court with neither home state or significant connection jurisdiction may exercise “appropriate forum” jurisdiction when a home state or significant connection state have declined on grounds of inconvenient forum or unjustifiable conduct. § 40-10A-201(a)(3). If none of the above applies, an alternate court may fill the vacuum and exercise jurisdiction over an initial custody proceeding. § 40-10A-201(a)(4). However, the UCCJEA is silent on bases for jurisdiction under tribal laws, including jurisdiction on the basis of tribal member status alone.
*109 The UCCJEA requires a state to “treat a tribe as if it were a state” in applying provisions (Articles 1 and 2) which pertain to jurisdictional determinations, communication and cooperation between courts. § 40-10A-104(b). The New Mexico Supreme Court in Garcia v. Gutierrez, 147 N.M. 105, 217 P.3d 591 (2009), grasped that tribal jurisdictional laws over tribal members are not addressed in the UC-CJEA’s jurisdictional scheme yet must be acknowledged. In Garcia, a divorce petition had been filed by the non-Indian mother in state court, while the Indian father filed a competing action in tribal court. The parties’ children were enrolled members of the Pojoaque Pueblo. Having found that the pueblo lacked “home state” jurisdiction under the UCCJEA’s strictly defined scheme, Garcia nevertheless applied a mixture of comity and best interest of the child considerations that take into account “the strong congressional expression in favor of tribal self-determination as to the upbringing of tribal children,” declaring that New Mexico courts “should assume that the tribal court has jurisdiction, as we hope and assume that the tribal court will treat the district court’s exercise of jurisdiction as proper.” Garcia, 147 N.M. at 107, 121, 217 P.3d at 593, 607. The Garcia Court described New Mexico’s long tradition of comity with tribal courts in child custody matters, noting that this tradition “can survive only where courts actively strive to reach common ground,” in the best interest of the child. Garcia, 147 N.M. at 121, 217 P.3d at 607-608. Such has been the tradition of our own courts. The spirit of mutual respect between courts is a defining characteristic of our relations with the federal and states courts and vice versa. See English/Navajo Glossary of Legal Terms, U.S. District Court, District of New Mexico, vol. 1, definition of COMITY, p. 25 (February, 1985) (Bee ánihoot’ánígií íl üik’ehgo náánálahdi nihwii’aahii há ya,a nídóot’\\lgo bee Iq; ya’at’eehgo ahodooniil il il\ bee (courtesy and respect; a willingness to do or grant something not as a matter of right, but out of goodwill, respect and tradition)). We would note that the Navajo translation of comity in the above glossary is not precisely on point as it merely discusses that there is a judge-to-judge relationship while leaving out reciprocal respect, mutual consideration, and obligation to protect the people, especially children, that are essential in such circumstances under our Navajo principles of law. A better translation, especially in the context of this case, is bilagáana dóó dim biwááshindoon bit haz’qqdqq ahoolzánigo ahilnidl\igo, alhaantsékeesgo él bíla’ashdla’n, ‘alchini niliinii tsi’ke’, altsq baants’ahákees; alts’qqhjn bibeehaz’áanii dóó bina’nitin yidísin dóó yeísti’, háála iiná dóó hoo-ghan haz’qqdóó éí álchiní nitsaago bí-déét’f. When implementing the decisions of governments and leaders through comity, the implementation must support our paramount obligation to protect human beings, especially our children.
Garcia further held that there was concurrent jurisdiction due to the non-Indian status of the mother. The Garcia court found that even though the parties’ children were tribal members, because of the non-Indian status of the mother both the state and tribal courts had “considerable interests in adjudicating child-custody matters involving New Mexico citizens and Pojoaque tribal members. Therefore, the exercise of concurrent (but not exclusive) state-court jurisdiction on these facts does not infringe on the Pueblo’s ability to make its own laws and be governed by them.” Garcia, 147 N.M. at 117, 217 P.3d at 603. It is clear from the plain wording of the Garcia decision that the state court’s assumption of concurrent jurisdiction applies only when one of the parties is a non- *110 Indian. Concurrent jurisdiction is not to be assumed in all cases, especially when all parties are enrolled members of the Navajo Nation.
In the spirit of comity, we will assume that the state court’s jurisdiction is proper in this case pursuant to § 40-10A-201(a)(3) NMSA (appropriate forum). Pursuant to Section 201(a)(3), New Mexico may acquire jurisdiction after a court with “home state” or “significant connection” jurisdiction has declined. If tribal jurisdiction is taken as the equivalent of “home state” jurisdiction for purposes of jurisdictional review, the record shows Section 201(a)(3) to be the best fit which, furthermore, does not interfere with the principle of exclusive jurisdiction of Navajo Nation courts.
We will next focus discussion on the decision of the Crownpoint court. Namely, whether the Crownpoint court had the authority to defer jurisdiction and whether deferment was proper under the circumstances.
As we have stated, the Navajo Nation Family Court has, generally, “original exclusive jurisdiction” over domestic relations and child custody matters pursuant to 7 N.N.C. § 253(B). However, as we have also stated, the Navajo Nation Long-Arm Statute at Section 253a more specifically applies here, where the residence of the parties and children is in question and jurisdiction is plainly derived from our inherent sovereign powers over tribal children, wherever they may reside, pursuant to Section 253a(F). “Exclusive jurisdiction” by definition means one court has the power to adjudícate a case to the exclusion of all other courts. It is the opposite situation from concurrent jurisdiction, in which more than one court may take jurisdiction over the ease. However, “exclusive jurisdiction” does not mean that the adjudicative power may never be relinquished or deferred, especially when foreign jurisdictions must frequently deal with one another in the spirit of comity. We must deal, almost on a daily basis, with federal and state foreign jurisdictions. We take judicial notice that our lands encompass three foreign state jurisdictions which have their own expressed interest in asserting foreign laws in certain instances, while we have the need and sovereign right to have our own laws applied uniformly across all our lands for the protection of our people. We work with these foreign jurisdictions in comity when our people live beyond our borders. Where jurisdiction is obtained under the Long-Arm Statute, 7 N.N.C. § 253a(E) enables the family court to “stay or dismiss the action in whole or in part on any condition that may be just” upon a finding that, “in the interest of substantial justice, the action should be heard in another forum.” Therefore, we find that the family court had statutory authority to defer adjudication of this case to the state court. Here, New Mexico properly acquired jurisdiction upon the Crownpoint court’s dismissal.
We next turn to whether the family court properly exercised its discretion under 7 N.N.C. § 253a(E). In its Order of Dismissal, the court found that the state court is the more convenient forum, distance-wise, for both parents, citing public policy reasons, including preservation of judicial resources, benefit to the children and discouragement of forum shopping, and also stating: “[i]t is not in the best interest of the children that litigation is prolonged and resources that could be devoted to the children be expended in redundant litigation.” Order of Dismissal, p. 1-2. In its Order Denying Motion for New Trial and to Alter or Amend Judgment, the family court expressly stated that the abstention was being made for reasons of judicial economy and out of *111 proper respect to the sister jurisdiction. Order Denying Motion, p. 1. The court also restated its finding from its Order of Dismissal that the state court in Bernalillo County was the most convenient forum due to distance, as well as the need for the children to settle visitation with Appellee quickly in their best interest. Order Denying Motion, p. 3. It is clear to this Court that the family court dismissed the matter for the proper reasons pursuant to 7 N.N.C. § 253a(F).
Appellant has challenged the propriety of admonishments made by the family court in its Order to Deny Motion in relation to forum shopping. Appellant states that the court’s factual findings giving rise to those statements were in error. While we believe Appellant brought the Crownpoint court’s disapproval upon herself by taking inconsistent positions in her pleadings in the different courts that served to obscure the facts regarding the children’s residency,[5] we agree that some of the language in relation to forum shopping need not have been so strident, and that the findings in relation to forum shopping were either in error or should have been subject to a hearing. However, we find the errors harmless, as the court could properly dismiss the matter on the basis of inconvenient forum alone.
We note that the family court relied on domicile of the mother to determine the residency of the child, using a provision of the ABBA at 9 N.N.C. § 1005. Additionally, we previously stated that jurisdictional decisions concerning child custody matters arising under the Children’s Code (now the ABBA), as set forth in court rules governing Children’s Code matters, require a jurisdictional hearing. Zuni v. Chinle Family Court, 7 Am. Tribal Law 495, 497 (Nav.Sup.Ct.2006). However, the domicile provision pertains only to ABBA proceedings. Additionally, while the ABBA provides discretion to decline a matter in cases of jurisdictional conflict, the discretion is subject to limitations not found in the Long Arm Statute. Namely, the ABBA further states that it is “the policy of the Navajo Nation that, absent good cause, child custody proceedings involving Navajo children [arising under the ABBA] should be heard in the Navajo Nation Courts.” This policy creates a presumption that ABBA cases be heard in our courts, hence the need for a jurisdictional hearing in ABBA cases.
We must clarify that any reliance on ABBA provisions for statutory authority in private child custody matters is incorrect. The ABBA, which is set forth at 9 N.N.C. §§ 1001-1504 of the Navajo Nation Code, covers delinquency, children in need of supervision, dependency, and Indian Child Welfare Act (ICWA) proceedings, not private child custody matters between parents. However, the Council’s findings, declarations, and broad policies and principles contained in ABBA regarding the government’s responsibilities over the welfare of our Navajo children may be cited as general statements of Navajo Nation policy in other situations.
Where both parents of a child are Navajo, our people living outside the reserva *112 tion must be able to rely on the cooperation of their Navajo courts with state court systems governing activities where they live, without fear that our courts will unduly impede resolution of disputes in such forums and impose undue burdens and delays on far-flung parties absent good cause. However, we caution our courts that ensuring the integrity of our inherent sovereign powers and that our internal laws and customs are available to tribal members, in particular our children, are sacred duties of our Navajo Nation courts. Therefore, our courts need to be extra vigilant that we do not aid in abridgements of our inherent sovereign powers by unnecessarily conceding that concurrent jurisdiction exists when it does not.
It is clear to this Court that children need both parents engaged in their lives without unnecessary delays. This is doubly true in this case, where the record shows visitation concerns have been raised and are being considered in the state court. We note with approval that in order to address these concerns, processes of mediation and evaluation have now been underway in that court for several months. Any forum that places the responsibility on the parents to work out parental responsibilities between themselves is consistent with a fundamental principle of our laws, where finding a solution “is up to him,” t’áá Mvó ají t’éego. See, e.g., In re Custody of T.M., 8 Nav. R. 78, 86, 3 Am. Tribal Law 485 (Nav.Sup.Ct.2001) (“The applicable maxim is, ‘it’s up to him,’ meaning that the individual must be consulted before action affecting his interest can be taken.”); and see Watson v. Watson, 8 Am. Tribal Law 361, 373-74 (Nav.Sup.Ct.2010) (describing táá hwó aji t’éego as the traditional teaching that each of us is responsible to do what is necessary to make or provide a decent life). In this case, it is not mere consultation that should occur. Parents have a moral and legal obligation to protect their children through their own careful decisions. Parents must coniront the situations involving their children and look to their children’s needs above the parents’ own personal disagreements. Through “talking things out,” baa yáti’, those in disharmony are brought back into hézhó. Duncan v. Shiprock Dist. Ct., 8 Nav. R. 581, 592, 5 Am. Tribal Law 458 (Nav.Sup.Ct.2004). Through participation in mediation, it is up to both parents, without animosity, to come together for the sake of the children and fully participate in talking out the issues. If properly done, the children can be human beings who are reliable, compassionate, and upright. T’áá nihí ánóht’é\go éí díí kqq bee nihá bik’eh ‘áhoolyaaígíí bik’ehgo hazhc>’ó atch’í’ yálti’, ‘ah/igq, dóó ahididláásh t’áág’ééd, dóó hazhó’ó binaho’áago éí niha’ álchiní bohónée dzáágo dinóoyéél. Parents need to heed these fundamental principles on parental duties.
V
CONCLUSION
For the foregoing reasons, this Court AFFIRMS the order of the Crownpoint Family Court denying Appellant’s motion for a new trial and affirming its dismissal of Appellant’s petition. This matter is CLOSED.

. Appellant claims the children moved to Tor-reón in February of 2011; Appellee claims the children moved to Torreon in October or November of 20 i 1.

. “Exclusive tribal jurisdiction is also acknowledged where an action involves a proprietary interest in Indian land; or when an Indian sues another Indian on a claim for relief recognized only by tribal custom and law; or when an Indian is being sued by a non-Indian over an occurrence or transaction arising in Indian country.” Hinkle at 883 citing Tempest Recovery Servs., Inc. v. Belone, 134 N.M. 133, 2003-NMSC-019, ¶ 14, 74 P.3d 67.

. For example, although 7 N.N.C. § 253(B) also provides exclusive jurisdiction for matters arising under the Children’s Code (now the Álchíní Bi Beehazáannii Act (ABBA)), nevertheless 9 N.N.C. § 1004(c) permits our courts to decline jurisdiction in favor of a forum with concurrent jurisdiction. We note that the ABBA at §§ 1001-1504 covers dependency, delinquency, children in need of supervision, and Indian Child Welfare Act proceedings which involve a governmental agency as the filing party.

. See, e.g., Ponzini, John Lino, Minimum contacts and jurisdiction over a non-resident Defendant under the UCCJEA (Aug. 25, 2011), www.martindale.com/family-law/article_ 1334038.htm.

. Appellant informed the state court that the children had lived "their entire life” with her in Torreon. Motion to Dismiss Petition to Establish Parentage for Lack of Subject Matter Jurisdiction, at 1. However, Appellant gave a different version to the Crownpoint court, acknowledging that the children lived in Albuquerque between October 2010 and February 2011. Appellant further claimed that the children resided with her and her mother in Torreon from February, 2011, yet stated that she, herself, did not move to Torreon until October, 2011. Petitioner’s Brief in Support of Motion for New Trial or Alter Judgment in Accordance with Nav. R. Civ. P. 59(A)(8) and Navajo Common Law, at 1-2.