*FORT DEFIANCE HOUSING CORPORATION*
Plaintiff-Appellee
*vs.*
*Michael and Erin LOWE*
Defendants-Appellants

In the Supreme Court of the Navajo Nation

No. SC-CV-32-03

April 12, 2004

464

Michael and Erin Lowe, Shiprock, Navajo Nation, *pro se*, for Appellants.

Sharon M. Noel, Esq., Rio Rancho, New Mexico, for Appellee.

Before BATES ARTHUR, Chief Justice, and FERGUSON, Associate Justice.

Opinion delivered by BATES ARTHUR, Chief Justice.

This matter comes before the Court on its own motion. We remand the case for proceedings consistent with this opinion.

## I

The facts and procedural history are taken from the Shiprock District Court's Order for Forcible Entry & Detainer & Money Due (Order). Michael and Erin Lowe (Appellants) live in the Shiprock Northwest Subdivision managed by Appellee Fort Defiance Housing Corporation (Appellee). The Order does not indicate whether the residence is a rental unit or a mutual help home.[1] Appellants failed to make payments to Appellee. Appellee filed a complaint for forcible entry and detainer to evict Appellants from their residence. Appellants did not respond to the complaint, and the Shiprock District Court issued its Order after an entry of default. The Order required Appellants to vacate the residence, to remove all their property, and to make $5,329 in past due payments. Appellants appealed the Order. There is nothing in the record before us that shows that Appellants submitted an appeal bond or that the Shiprock District Court waived the bond.[2]

## II

Based on the lack of an appeal bond or alternatively, a waiver, we take judicial notice of a potential jurisdictional defect. *See Dale Nicholson Trust v. Chavez*, 8 Nav. R. 417, 426 5 (Nav. Sup. Ct. 2004) (a court may question its own jurisdiction). Evictions on the Navajo Nation are governed by the forcible entry and detainer statute, 16 N.N.C. §§ 1801 *et seq.* Upon appeal, the statute requires an appellant to give notice to the appellee as in other appeals, but also to fil[e] with the [trial] court within five days after rendition of the judgment a bond . . . with sureties to be approved by the Navajo Nation Court Judge, payable to the adverse party and conditioned that he or she will prosecute the appeal to effect and pay all

---

1 Mutual help residents differ from mere tenants because they have an equity interest in the property. *Navajo Housing Authority v. Betsoi*, 5 Nav. R. 55, 56 (Nav. Sup. Ct. 1985).

2 We note that the Shiprock District Court did not send the case record to this Court, and our conclusion that Appellants failed to file an appeal bond is due to the absence of any evidence to the contrary in the documents before us. Appellee previously filed a motion to dismiss this case because of Appellants' failure to file a transcript, relying on Rules 9 and 10 of the Navajo Rules of Civil Appellate Procedure. We denied the motion, noting in our order that the procedure for filing appeals in forcible entry and detainer cases is unique and set by statute. Specifically, we observed that an appellant is not required to file a transcript in such cases, but that it is the responsibility of the district court judge to transmit a "transcript" of the docket entries with "all original papers" to the Supreme Court clerk. 16 N.N.C. § 1808. It is unclear why the district court did not send the record in this case, but it may be because Section 1808 requires the filing of an appeal bond before the responsibility of the district court judge is triggered. Because the court did not transmit the record, we conclude there was no appeal bond or waiver in this case.

costs and damages which may be adjudged against him or her.[3]  16 N.N.C. § 1807. Importantly, the filing of an appeal bond stays the lower court's eviction order. 16 N.N.C. § 1808. Section 1807 is jurisdictional, and failure to comply with its conditions requires that this Court dismiss the appeal. *Navajo Townsite Community Development Corp. v. Sorrell*, 8 Nav. R. 214, 219 (Nav. Sup. Ct. 2002); *Hood v. Bordy*, 6 Nav. R. 349, 351 (Nav. Sup. Ct. 1991); *Yazzie v. Navajo Housing Authority*, 3 Nav. 117, 117 (Nav. Ct. App. 1982); *Benally v. Navajo Housing Authority*, 3 Nav. R. 55, 56 (Nav. Ct. App. 1981). An appellant complies with Section 1807 when he or she submits a bond within five days of the district court's order, or when the district court waives the bond on request. *Sorrell*, 8 Nav. Sup. Ct. 219–20. The district court may, in its discretion, waive the bond if the appellant shows "an earnest attempt to comply with the statute by providing documents showing such attempts." *Id.* at 220. Here there is no indication that appellant filed an appeal bond with the court or sought and was granted a waiver.

While under a strict interpretation of the statute we must dismiss this appeal, we are compelled to inquire whether or not a dismissal would violate a fundamental right of Appellants under Navajo law. We will interpret Section 1807 in light of the Navajo Bill of Rights, as informed by *Diyin Nohookáá' Dine'é Bi Beehaz'áanii* (Navajo Common Law), to decide whether we must dismiss this case.

### III

### A

In the context of a residential tenant, the forcible entry and detainer statute provides a landlord with a procedure by which a Navajo person or family can be involuntarily separated from their home. The Court will take judicial notice that a home, *hooghan*, in the context of Navajo custom and tradition is more than just a dwelling place. Judicial notice is appropriate in matters of custom and tradition, *Apache v. Republic Nat'l Life Insurance Co.*, 3 Nav. R. 250, 252 (W.R. Dist. Ct. 1982), and may be taken of facts "every damn fool knows." *Dawes v. Yazzie*, 5 Nav. R. 161, 165 (Nav. Sup. Ct. 1987). Here, the central place a home has for a Navajo family is unquestionably a concept everyone knows.

The Navajo home is not only a roof over one's head, but the place where families are established and children grow and learn; it is the center of all Navajo relationships. Children are conceived in the home. Certainly in the recent past children were born at home and some may still be, even in this modern era of hospitals. In the home children are given their education and knowledge of who they are and their place in the world. In the home children learn their responsibilities to themselves and to their family members, and where children learn the concept of *k'é* that will guide their relationships throughout their life.

3 The omitted material indicated by "..." concerns the amount of the bond. We struck that language from the statute as a violation of equal protection and due process in *Navajo Townsite Community Development Corp. v. Sorrell*, 8 Nav. R. 219 (Nav. Sup. Ct. 2002).

The home in Navajo thinking is not a mere piece of property in which one holds an equity interest, but *hooghan* rises to a level of spiritual centrality. Navajo families perform sacred ceremonies and say prayers in the home. After successive prayers and ceremonies by the introduction and reintroduction of corn pollen on the retaining beams, the sprinkling of white and yellow corn and the spreading out of soil to the west, the blessedness of the home is compounded, building in power and spirituality. This concept of home is not a mere concept of property ownership. It is much more.

Given the importance of a home to Navajos, a tenant has an absolute right to due process in eviction proceedings. Though we have previously recognized a protected interest under due process only for mutual help homes, *Navajo Housing Authority v. Betsoi*, 5 Nav. R. 55, 57 (Nav. Sup Ct. 1985), we have also held that Navajo due process encompasses a wider range of interests than due process under the United States Constitution. *Atcitty v. District Court for the Judicial District of Window Rock*, 7 Nav. R. 227, 231 (Nav. Sup Ct. 1996). The centrality of a home to Navajo life means that a tenant's interest in a home, whether a rental unit or not, cannot be taken away without due process. Also, independent of this interest, we have recognized a due process right of access to the courts, including appeals. *Sorrell*, 8 Nav. R. 214. That right requires that our Court give appellants meaningful notice and an opportunity to be heard. *In re Certifed Question II*, 6 Nav. R. 102, 118 (Nav. R. 214). It also means that the right of access to the courts should not be denied on technical grounds. *Sorrell*, 8 Nav. R. at 221.

Under these principles, Navajo courts must assure that tenants are provided due process before a tenant can be evicted from his or her home under the forcible entry and detainer statute. We therefore turn to the appellate requirements in the forcible entry and detainer statute to decide whether the procedures provide due process.

B

The forcible entry and detainer statute sets out a very short time to comply with the bond requirement, and provides no guidance on the actual procedure for the district court to follow to set bond conditions. Section 1807 allows only five days for an appellant to submit a bond or to file a waiver. The statute does not provide any guidelines on how the trial judge sets the bond. Apparently an appellant must contact the trial judge to set bond conditions, the judge must set those conditions, and the appellant then must comply with those bond conditions within the same five days.

The Navajo Nation Council appears to have adopted the five day rule from the Arizona forcible entry and detainer statute. *Compare* 16 N.N.C. § 1807 *and* A.R.S. 12- 1179 (historical note indicating identical provision in effect at time of passage of Section 1807); *see also Sorrell*, 8 Nav. R. at 220 (noting identical language). That a provision in the Navajo Nation Code is adopted from an outside source does not, by itself, make it illegitimate, as the Navajo Nation Council has made it the law

of the Navajo Nation. However, it does require that this Court carefully interpret such adopted provisions consistent with the needs and values of the Navajo people.

The primary Navajo value that informs our due process analysis is *k'é*. In the context of Navajo due process, *k'é* ensures that individuals living in disharmony are brought back into right relationships and into the community to reestablish order. *Atcitty*, 7 Nav. R. at 230. Court procedures which result in homelessness have the potential for creating disharmony, not only for the individual and the family, but also for the entire community. Harmony among all concerned cannot be restored if appellate procedures are so onerous that tenants cannot effectively seek review with this Court.

Under Navajo due process this Court cannot take the separation of a Navajo person from his or her home lightly, nor can we simply adopt a strict non-Navajo statutory interpretation of the law. Navajo due process includes the concept of fundamental fairness. *Reservation Business Services v. Albert*, 7 Nav. R. 123, 128 (Nav. Sup. Ct. 1995). It is fundamentally unfair to impose harsh and difficult timelines and to penalize a person by taking away their home without some strict requirements to assure due process. After all, Navajo due process requires that Navajo courts be just and do justice. *Zion's First Nat'l Bank v. Joe*, 4 Nav. R. 92, 93 (Nav. Ct App. 1983). We take judicial notice of the fact that distances within the Navajo Nation are great, and transportation sometimes difficult. We do not do justice by expecting tenants to understand the unique eviction appellate requirement, to come into the court to see the judge, get the judge to set bond conditions, and then to comply with such conditions, all within five days of the order. We therefore hold that in order to assure due process, a district court's eviction order must give tenants notice of the appeal bond requirement, the timing requirements, and the specific conditions for the bond set by the court. We also interpret the five days in the statute to be five working days from receipt of the order, to give tenants additional time to comply with the judge's conditions. Therefore, we instruct that the following procedures be followed in forcible entry and detainer cases when the court orders the eviction of a tenant from his or her residence.[4] The judge must include explicit language in the eviction order alerting the tenant that he or she has five working days from receipt of the order to submit an appeal bond to properly appeal the order. Also, the trial judge must include the conditions for the bond in the order. Tenants who wish to appeal must file the bond with the court within five working days of receipt of the order, or, within that time, file a waiver request setting out why they cannot comply with the conditions set forth in the order. Consistent with previous opinions, the trial court has discretion to grant or deny the waiver. *Sorrell*, 8 Nav. Sup. R. at 220.

4 We restrict our holding today to evictions from residential units, and make no comment on the due process requirements in commercial property situations.

## IV

To summarize our ruling today, due process in the context of taking away a person's home through the use of the forcible entry and detainer statute requires that a district court include in its eviction order (1) notice of the appeal bond requirement, (2) the timing for submission of the bond or waiver request, and (3) the conditions the district court will require for the bond. As the order in this case did not include these requirements, we REMAND the case to the district court. The court shall set bond conditions in an order, in an amount consistent with the guidelines set out in *Sorrell*, 8 Nav. R. 214, 220, and deliver the order to Appellants immediately. After the court issues the order, Appellants shall have five working days from receipt of the order to comply with the bond conditions or to file a waiver request. Should Appellants fulfill the bond requirement or receive a waiver, they may refile their appeal.