OPINION

This case concerns whether the Navajo Nation courts have jurisdiction over a custody dispute, and whether the Chinle Family Court provided due process to Petitioner when it awarded custody. The Court denies Petitioner’s request for an extraordinary writ.
I
The relevant facts are taken from the Petition and its attachments. Petitioner is a non-Navajo father of an enrolled Navajo child. Petitioner married Real Party in Interest Bertha James Miles (Mother) in Chinle. Their daughter, M.M.[1] was born within the Navajo Nation. Her parents’ relationship did not last, however, and Petitioner left the Nation with the child in late 2003.
The circumstances and timing of their departure are a matter of dispute between the parties. See supra, at 612, n. 2. Petitioner alleges that he left with the child in October, 2003, with Mother’s permission, and attaches a signed note from Mother consenting to Petitioner taking custody of their daughter. In pleadings filed in Chin-le Family Court (Family Court), Mother alleged Petitioner removed the child from the Nation in December, 2003 without her permission. What is clear from the record is that in November, 2003, Mother filed a petition for a domestic abuse protection order against Petitioner with the Family Court on behalf of her daughter. The Family Court granted the protection order, and gave custody of the child to Moth *611 er “pending discussions of marriage procedures.” Protection Order, Miles v. Miles, November 20, 2003, Petitioner’s Exhibit 2. The order prohibited Petitioner from removing the child from the Nation. The order expired under its own terms one year later. Since 2003, Petitioner and his daughter have lived in Missouri, Florida, Georgia, Alabama, and Texas.
The current Petition arises out of a divorce petition filed by Mother in the Family Court in March, 2007. At the time she filed her petition, she also filed a pleading titled “Motion for Immediate Temporary Child Custody and Child Support.” The motion was filed without notice to Petitioner, and alleged that Petitioner left the Nation with the child in December, 2003 in violation of the protection order. The Family Court granted the motion ex parte, and issued a temporary custody order granting custody to Mother. In July, 2007, Mother filed a motion for a writ of habeas corpus again seeking custody of the child. Mother invoked the Parental Kidnapping Prevention Act, 28 U.S.C. § 1738A, and the Uniform Child Custody Jurisdiction and Enforcement Act as authorities justifying the issuance of the writ of habeas corpus. Later in July Mother filed documents showing her various attempts to serve Petitioner with the petition and custody motion since the Family Court issued the temporary custody order. However, Mother never successfully served Petitioner. In September, 2007, the Family Court issued a minute order granting the writ of habeas corpus and requiring the removal of the child from Petitioner’s custody and placement of the child with Mother. The Family Court invoked the PKPA and the UCCJEA as authority to issue the order. Based on the two custody orders, Texas law enforcement removed the child from Petitioner’s custody in January, 2008, and gave her to Mother. Mother then returned with the child to the Nation. This Petition followed.
II
The issues in this case are (1) whether Navajo family courts have jurisdiction to decide custody of a Navajo child when she and her father reside outside the Navajo Nation, and (2) whether due process is violated when a family court issues an ex parte temporary custody order and later issues a writ of habeas corpus ordering removal of the child after the petitioning party submits evidence of attempted service.
III
Petitioner requests an extraordinary writ to compel the Family Court to vacate its custody orders and return the child to him. He does not specify what type of writ he requests, and does not indicate why there is no “plain, speedy and adequate remedy at law.” Hurley v. To’hajiilee Family Ct., 6 Am. Tribal Law 680, 681-82, 2005 WL 6285955, **1-2 (Nav.Sup.Ct.2005). As Petitioner alleges that the custody orders must be vacated as beyond the Family Court’s jurisdiction and as violative of due process, it appears a writ of prohibition or a writ of mandamus would be appropriate if Petitioner proves his case. See In re A.P., 6 Am. Tribal Law 660, 662, 2005 WL 6235943, *1 (Nav.Sup.Ct.2005) (defining types of writs). Further, though not stated by Petitioner, the Court believes that in the case of child custody, where a petitioner alleges a child has been taken from him or her illegally by a lower court, there is “potential damage ... that would be irreversible on appeal,” Hurley, 6 Am. Tribal Law at 681-82, 2005 WL 6235955, **1-2, and therefore no adequate remedy at law. Waiting until a *612 final judgment in this case to deeide the jurisdictional and civil rights questions presented would potentially cause damage to Petitioner, to Mother, and most importantly, to the child that could not be remedied on appeal. Proper placement of the child is fundamentally important to her well-being, and delay clearly is not in her best interest. The Court therefore accepts the Petition, and will decide the case on the merits.
IV
Petitioner first argues that Navajo Nation courts lack jurisdiction to decide custody of a Navajo child when the child and the father reside outside the Nation. According to the Petition, the child lived with her father in various places since leaving the Nation in 2003, including Missouri, Florida, Georgia, Alabama, and Texas, where the child was picked up by law enforcement and given to her mother based on the Family Court’s orders.[2] As the child did not reside within the Nation at the time the mother filed her divorce petition and request for custody, Petitioner argues the Family Court lacked authority to issue its custody orders. Petitioner makes much of the Family Court’s invocation of the Parental Kidnapping Prevention Act (PKPA) and the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) when it issued its writ of habe-as corpus. According to Petitioner, these acts do not apply to the Navajo Nation, and the Family Court erred when it cited to them.
While the Court agrees that the PKPA and the UCCJEA do not apply to the Nation, the Court holds that the Navajo Nation Children’s Code authorizes the Family Court’s jurisdiction in this ease. Under the plain language of the Children’s Code, Navajo Courts have jurisdiction to decide custody of Navajo children regardless of residency within the Nation. The Code states:
The Family Court may hear child custody matters involving Navajo children wherever they may arise. The Court may decline jurisdiction in appropriate circumstances where a forum with eon- *613 current jurisdiction is exercising authority.
9 N.N.C. § 1055(D) (2007). It is then the child’s status as a Navajo, and not her presence within the territory of the Navajo Nation that allows jurisdiction. Further, the residence of the parent is irrelevant. Petitioner does not discuss Section 1055(D). Though the Family Court did not invoke Section 1055(D), the Court concludes that the section nonetheless justifies jurisdiction, and, absent some overriding law precluding jurisdiction, the Family Court’s orders were within its authority to issue.[3]
Though the Children’s Code provision conflicts with both the PKPA and the UC-CJEA, those laws do not bar the Family Court’s jurisdiction in this ease. Both the PKPA and the UCCJEA premise jurisdiction on residency, specifically requiring a child to reside within a state for six consecutive months before that jurisdiction is the “home state” with exclusive jurisdiction over the matter. See 28 U.S.C. § 1738A(b)(4), (c)(2)(A); UCCJEA, § 102(7); 201(a)(1); 202(a). The PKPA is a federal statute, while the UCCJEA is a proposed statute drafted by the National Conference of Commissioners on Uniform State Laws and adopted by state legislatures. The PKPA does not include Indian tribes in its definition of “State,” see 28 U.S.C. § 1738A(b)(8), and consequently does not bind the Nation. The UCCJEA applies in a jurisdiction only if that jurisdiction chooses to adopt it, which the Navajo Nation Council has not done. These statutes do not apply to the Nation, and consequently they cannot regulate the Nation’s jurisdiction over the child.
This does not mean that a family court is prohibited from discussing the PKPA and the UCCJEA, and demonstrating that the Nation’s assertion of jurisdiction is consistent with them. Under the UCCJEA, states need only recognize decisions that conform to that statute’s definition of jurisdiction. UCCJEA, § 303. States had the option when adopting the UCCJEA to adopt a provision treating tribes as “States” under the act. See UC-CJEA, § 104. Even if our courts have jurisdiction under Navajo law, states might refuse to recognize our decisions if they are inconsistent with the UCCJEA, potentially causing enforcement problems and hardship for Navajo children.[4] Realistically, recognition and enforcement of Navajo Nation custody orders are just as important as our decision that the Nation’s courts have jurisdiction. The Court therefore concludes that family courts may buttress their jurisdiction under our Chil *614 (Iren’s Code by demonstrating how the application of these laws[5] supports Navajo jurisdiction, if deemed necessary to invoke the mandate to recognize the decision under the UCCJEA.[6] Cf. Nelson v. Pfizer, 4 Am. Tribal Law 680, 685, 2003 WL 25794136, *4 (Nav.Sup.Ct.2003) (though not bound by rule in Montana v. United States, Navajo courts may justify jurisdiction under Montana exceptions). However, consistent with Section 1055(D), a family court may not decline jurisdiction except to defer to a state or other Indian tribe that has already invoked concurrent jurisdiction over the child.
Based on the above analysis, a writ is inappropriate.
V
Petitioner also argues that the orders issued by the Family Court without his participation violated his due process rights, and that the Court should therefore issue a writ returning the child to him. Due process under the Navajo Bill of Rights is similar to the same right under the United States Constitution, in that our courts must provide notice and an opportunity to be heard, including in custody matters. See Zuni v. Chinle Family Ct., 7 Am. Tribal Law 495, 498-500, 2007 WL 5891624, **3-4 (Nav.Sup.Ct.2007); Lente v. Notah, 3 Nav. R. 72, 73-74 (Nav.Ct.App.1982). The Family Court issued a temporary custody order on Mother’s request soon after she filed her divorce petition. Mother sought an ex parte order removing the child from Petitioner’s custody, which by definition was a request for removal of the child without notice to the father. Based on a second request by Mother, the Family Court later issued a writ of habeas corpus through a minute order. Before the Family Court issued the writ of habeas corpus, Mother described to the Family Court her various attempts to serve Petitioner with the divorce petition and custody motion.
Under the circumstances of this case, the Court holds that Petitioner’s due process rights were not violated. If the ex parte order issued by the Family Court upon the filing of the divorce petition was the only custody order, there would be a serious question whether due process was appropriately followed. See Lente, 3 Nav. R. at 75 (vacating custody order for lack of notice to the mother). Custody of children *615 is such an important issue that only in the direst of circumstances involving the safety of the child should a family court remove a child from the custody of a parent without the opportunity for that parent to respond to the petition before the removal. Indeed, in such cases, as demonstrated here, see supra,, note 2, the allegations of the mother and the father might conflict in key areas, and it is dangerous to take one party’s assertions as true without allowing the other party to respond.
However, in this case, though the ex parte order is problematic, the Court concludes that the second order, the writ of habeas corpus, does not violate Petitioner’s due process rights. The mother supplied information to the Family Court on her attempted service on Petitioner. The Family Court issued its writ based on this information. Though he was not heard before the writ was issued, the mother demonstrated great effort to attempt to give him notice and provide that opportunity. In this way, the case is quite different than Zuni v. Chinle Family Ct., when the Navajo Nation sought the transfer of a custody case from the New Mexico courts, and simply made no attempt to serve the non-Navajo foster parent before the Family Court issued its order accepting transfer. See 7 Am. Tribal Law at 496, 2007 WL 5891624, *1; see also Lente, 3 Nav. R. at 73, 74 (custody order issued without any attempt at service of petition on mother). Here, Petitioner’s movements from place to place, whatever his motivation, made it extremely difficult for service to be made. Under such circumstances, when Mother showed her efforts to serve him, the Court will not reverse the Family Court’s order simply because he was not served before the order was issued. Under this analysis, a writ in inappropriate.
VI
Based on the above, the Petition is DENIED. The case is closed, and any further proceedings are before the Family Court. The orders in this case are temporary pending the outcome of the divorce case, and Petitioner now has the full opportunity to assert his custody rights. The Court does no comment on the merits of custody, as that is for the Family Court to decide in the first instance. However, given the circumstances of the ease, when Petitioner has not yet been heard, this Court urges the Family Court to decide the merits of custody with participation of both parties as soon as possible.

. Consistent with this Court's rule concerning appeals from juvenile cases (though technically this not an appeal, but an original proceeding for an extraordinary writ), the Court refers to the minor child only by her initials. See Rule 24, Navajo Rules of Civil Appellate Procedure.

. Based on the Petition before this Court and Mother's pleadings in the Family Court, there is a factual dispute concerning how the child ended up with Petitioner outside the Nation. According to Mother, Petitioner left the Nation with the child in December, 2003, without her permission and in violation of the domestic protection order the Family Court issued in November, 2003. The protection order states that Mother would have custody "pending discussion of marriage procedures,” and that Petitioner could not take the child off the Reservation. Protection Order, Miles v. Miles, November 20, 2003, Petitioner’s Exhibit 2, Petitioner alleges that he and the child left the Nation with Mother's permission in October, 2003, before the protection order was issued. Petitioner submits a signed handwritten note from the mother dated October 27, 2003, stating that the mother was going back to school and that the father could take the child. Mother alleges that she had no contact with Petitioner or the child after they left, and had tried several times to track them down through his relatives. In contrast, Petitioner alleges Mother actually came to Missouri in 2004 to reconcile and that he and the child briefly returned to the Nation, but that ultimately their relationship could not be repaired, causing him to leave the Nation again with the mother's knowledge. Under the Petitioner’s scenario, the child lived outside the Nation with the full permission of Mother. Under Mother's scenario, Petitioner fled the Nation with the child in violation of Navajo law, and kept the child from her outside the Nation until she filed her divorce petition and asked the court to bring the child back to the Nation. One or both of these parties is not being forthright. However, it is not necessary' to the jurisdictional issue before this Court to decide which, if either, of these scenarios is correct. Further, as the protection order expired under its own terms in November, 2004, it is irrelevant to the custody question before this Court.

. Petitioner cites to a prior decision of this Court, Yazzie v. Yazzie, 5 Nav. R. 66 (1985), that he claims forecloses custody jurisdiction over non-resident Navajo children. In Yazzie the trial court had decided custody of nonresident children who, though the father was Navajo, were enrolled with the Comanche Tribe. See 5 Nav. R. 66, 67. This Court noted that the children had not resided within the Nation at the time the divorce petition was filed. Id. at 67. This Court vacated the child custody decree, concluding that ‘‘[t]he trial court had no jurisdiction to determine any matters in this case other than granting the dissolution and making a disposition of the property found within its territorial jurisdiction." Id. at 71. Even assuming the children in Yazzie were “Navajo children” under Section 1055(D), the Court nowhere discussed that section of the Children’s Code. That decision therefore does not affect today’s decision, that Section 1055(D) authorizes jurisdiction over non-resident Navajo children.

. The Texas law enforcement officers who picked up the child based on the Family Court's orders recognized the Nation's authority apparently regardless of the Family Court’s conformity with the UCCJEA. But see supra, n. 2 (discussing whether Family Court had jurisdiction under UCCJEA). However, this might not always be the case.

. As previously mentioned, the PKPA by its plain language does not apply to Indian tribes. However, if another jurisdiction disagreed with the Court’s conclusion, and nonetheless applied the PKPA to a Navajo custody order, the same problem would occur. The Nation's orders might not be enforced if the state court opined that the orders did not conform to the jurisdictional scheme mandated by the statute.

. Under this analysis, the Family Court’s assertion of jurisdiction might be consistent with the UCCJEA. Petitioner argues that no state is the “home state” of the child under the UCCJEA, because the child did not live in any one state for six consecutive months before the mother's filing of her divorce petition. According to Petitioner, Texas is the appropriate state because there is no other state that can assert jurisdiction. However, the same thing could be said of the Navajo Nation. If there is no "home state” either the Navajo Nation or Texas could assert jurisdiction under the UCCJEA. Further, the UCCJEA states in the next subsection that "physical presence of ... a child ... is not necessary or sufficient to make a child custody determination.” UCCJEA, § 201(c). If the child need not be even present in the state for a state to assert jurisdiction, the fact that the child was present in Texas and not the Navajo Nation has no bearing on which jurisdiction is the appropriate one under the UC-CJEA. Indeed, either Texas or the Nation could fit the statutory language, and Petitioner did nothing to invoke Texas’ authority over the child before the mother invoked Navajo jurisdiction by filing her divorce petition.