OPINION

This case concerns a repossession of a mobile home. The Court holds that the automatic stay provision of the federal Bankruptcy Code does not bar counterclaims filed by a mobile home owner in a repossession case against a company that purchased a financing contract in a bankruptcy proceeding. The Court also holds that an arbitration clause in the financing contract mandating binding arbitration violates Navajo public policy and is invalid.
I
The relevant facts are as follows. In 1994 Appellant Duncan (Duncan) bought a mobile home, and received a loan for the purchase from Conseco Finance Corporation, Inc. (Conseco). Conseco later filed for reorganization under Chapter 11 of the federal Bankruptcy Code. CFN Investment Holdings, LLC purchased all of Conseco’s servicing contracts in the bankruptcy proceeding, including Conseco’s contract with Duncan. The bankruptcy court’s order approving the sale states that CFN purchased the assets free of any prior claims against Conseco. CFN later became Appellee Green Tree Servicing, LLC (Green Tree).
The present action began when Green Tree filed a repossession action against Duncan in the Shiprock District Court (District Court). Duncan filed a timely answer, counterclaims, and a motion for a jury trial. Duncan alleges in her counterclaims that “the Plaintiffs” committed fraud, intentional and emotional distress by harassment, and assault. Answer, Index Listing 9, at 2. The District Court denied the motion for a jury trial, and Duncan sought a writ of mandamus from this Court. This Court issued the writ to compel the District Court to conduct a jury trial. Duncan v. Shiprock District *637 Court, No. SC-CV-51-04, 5 Am. Tribal Law 458, 2004 WL 5658109 (Nav.Sup.Ct.2004). While the parties prepared for trial, Green Tree filed a motion to dismiss and informed the District Court of Conse-eo’s bankruptcy proceedings. The court dismissed Duncan’s counterclaims, concluding that Green Tree was “a party to a federal bankruptcy proceeding,” Order of Dismissal at 8, and therefore the court lacked jurisdiction due to the automatic stay provision of the federal Bankruptcy Code, 11 U.S.C. § 362(a).
Duncan filed an appeal with this Court. In its brief, Green Tree brought up several grounds for upholding the dismissal not relied upon by the District Court, including that an arbitration clause in the financing contract barred Duncan’s claims. After oral argument, the Court asked the parties to file supplemental briefs on whether the arbitration clause was enforceable. The Court also invited amicus briefs on the issue. New Mexico Legal Aid, DNA People’s Legal Services and James Zion filed amicus briefs, all arguing that the arbitration clause was unenforceable under Navajo law.
II
The issues in this case are (1) whether the automatic stay provision of the federal Bankruptcy Code bars counterclaims filed by a mobile-home owner in a repossession proceeding against a company that purchased a financing contract in a bankruptcy proceeding; (2) whether the Court should hear reasons why a complaint should be dismissed that were not relied upon by the District Court; (3) whether purchase of a financing contract in a bankruptcy proceeding bars counterclaims against the purchaser; and (4) whether an arbitration clause that bars a mobile-home owner from filing a court action, but allows the other party to file a repossession action, is valid under Navajo public policy.
III
The issues in this case are questions of law. The Court reviews such legal questions de novo, with no deference given to the trial court’s decision. Navajo Transport Services v. Schroeder, No. SC-CV-44-06, 7 Am. Tribal Law 516, 517, 2007 WL 5886684 at *1 (Nav.Sup.Ct.2007).
IV
The first question is whether the automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362(a), bars Duncan’s counterclaims. That provision contains a sweeping stay of litigation and lien enforcement, effective on the initiation of a bankruptcy case by a “debtor.” The stay is automatic upon filing of the bankruptcy petition commencing a case under Chapter 11 (reorganization), and acts as a court order to restrain creditors from continuing the judicial process or collection efforts against a debtor. This gives a debtor a breathing spell from creditors by stopping all collection efforts, harassment, and all foreclosure actions, allowing a debtor to attempt a reorganization plan. The policy rationale for the stay is “to grant complete, immediate, albeit temporary relief to the debtor from creditors, and also to prevent dissipation of the debtor’s assets before orderly distribution to creditors can be effected.” S.E.C. v. Brennan, 230 F.3d 65, 70 (2d Cir.2000).
The only relevant Navajo case discussing automatic stays is Oakwood v. Tsinigini, No. SC-CV-49-02, 4 Am. Tribal Law 639, 2003 WL 25794135 (Nav.Sup.Ct.2003). The parties did not address Oakwood in their briefs or at oral argument. In Oak-wood, a finance company that had filed for bankruptcy subsequently filed a repossession action against the Tsiniginis in Shi- *638 prock District Court. See id. at 4 Am. Tribal Law at 640, 2003 WL 25794135, *1. Tsinigini filed an appeal from the district court’s order, and Oakwood argued such an appeal was barred by the automatic stay in the bankruptcy proceeding. See id. The Court ruled the automatic stay provision did not apply in a repossession case filed by a bankruptcy debtor. Id. at 640, 2003 WL 25794135, *1. The Court explained the policy behind the automatic stay:
The Bankruptcy Reform Act of 1978 provides that the automatic stay only includes actions initiated against a debt- or and is silent as to actions brought by a debtor. 11 U.S.C. § 362(a)(1). Federal courts looked to a Congressional House Report accompanying the Act which enacted the current provisions, and concluded that the stay was intended to protect bankruptcy debtors by giving them a breathing spell from the cost and confusion of defending against actions by creditors during bankruptcy, and to provide creditors with a fair and orderly process to receive payments on their claims.
Id. at 640, 2003 WL 25794135, *1.
In the present case we have the functional equivalent of the facts in Oakwood, because Green Tree initiated the repossession action. Normally, a creditor, that is, anyone other than the debtor, is not prohibited by the automatic stay from pursuing a counterclaim if the creditor must respond to an action filed by the debtor. As a federal court has said, “out of fairness the defendant should be allowed to defend himself from attack and the automatic stay should not tie the hands of the defendant while the plaintiff debtor is given free reign to litigate.” In re White, 186 B.R. 700, 704 (9th Cir. BAP 1995). Assuming Green Tree is the debtor, the automatic stay does not protect it in this case. It affirmatively filed its ease; it cannot complain that it has to defend itself from counterclaims arising out of that case.
However, the Court need not even consider the automatic stay provision at all, as Green Tree is not the debtor. The automatic stay protects a “debtor,” and the definition of a “debtor” is “a person or municipality concerning which a case under [the Bankruptcy Code] has been commenced.” 11 U.S.C. § 101(13). Green Tree Servicing did not file the bankruptcy petition, and the bankruptcy proceeding did not concern Green Tree. Instead Green Tree purchased Conseco’s assets in the bankruptcy proceeding. Conseco, not Green Tree, is the debtor. That fact, in itself, is enough to reverse the District Court’s decision. A purchaser of a debt- or’s assets does not purchase the debtor’s right to a stay.
Under either rationale discussed above, the District Court erred when it dismissed the counterclaims based on the automatic stay.
V
As the District Court relied exclusively on the automatic stay provision of the Bankruptcy Code, the next question is whether the Court should simply remand the case for further proceedings. Green Tree asserts several alternative reasons to affirm the dismissal of Duncan’s counterclaims not discussed by the District Court. Green Tree argues that Duncan’s complaint on her counterclaims fails to state a claim under Rule 12(b)(6) of the Navajo Rules of Civil Procedure. Green Tree further argues that Duncan’s claim of fraud is precluded under the Navajo statute of limitations for such actions, and, as the claim is allegedly against Conseco, is also barred under the Bankruptcy Code. Finally, *639 Green Tree asserts that the financing contract requires arbitration of Duncan’s counterclaims, and that therefore Duncan could not have filed her claims in the District Court. Citing federal cases, Green Tree asserts that this Court can uphold the District Court’s dismissal for any reason supported by the District Court record, and asks this Court to dismiss the case on one or more of those alternative grounds.
This Court may, but is not required to, uphold district court decisions on alternative grounds. See, e.g., Miles v. Chinle Family Ct., No. SC-CV-04-08, 7 Am. Tribal Law 608, 612, 2008 WL 5437146 at *3 (Nav.Sup.Ct.2008). However, the Court generally will not consider arguments made by a litigant not raised in the district court, See Benally v. Mobil Oil, No. SC-CV-05-01, 4 Am. Tribal Law 686, 691, 2003 WL 25794036, at *3 (Nav. Sup.Ct.2003). The Court will, in its discretion, consider arguments not raised below “when an important issue of public policy is presented, there are sufficient undisputed facts in the existing record to make a decision, and the outcome under the law will dispose of the case.” Id. at 691, 2003 WL 25794036, at *3-4.
Here, Green Tree did not argue the alleged failure to state a claim or the statute of limitations bar, but did assert that its purchase of Conseco’s assets was free of all claims against Conseco, and that the arbitration clause barred any court action. This Court will not consider the first two arguments; they are not important issues of public policy. The Court does consider the last two.
VI
Green Tree asserts that its purchase of Conseco’s assets, including Duncan’s contract, in the bankruptcy proceeding, was free and clear of any claims against Conseco. Green Tree points to language in the bankruptcy court’s order approving the purchase that states that Green Tree’s purchase of the assets is free of any prior claims against Conseco. Green Tree contends that any claims Duncan had against Conseco therefore cannot be asserted against Green Tree.
Green Tree is correct, to the extent that Duncan’s claims concern actions by Conse-co prior to the sale in bankruptcy. However, Duncan states in her counterclaim that
2. Plaintiffs have committed fraud by making false statements to Defendant to obtain possession of the collateral and told her it had been sold, knowing she would rely on said statements. Defendant did rely on such statements, all to her detriment. As a result of the fraudulent conduct of Plaintiff, Defendant is entitled to damages in excess of $50,000.
3. Defendant has suffered damage to her credit rating, intentional and emotional distress by harassment by Plaintiffs, suffered an assault by Plaintiffs, all to her damage in a sum of in excess of $50,000.
Answer, Index Listing No. 9, at 2 (emphasis added). Duncan identified the “Plaintiffs,” that is, Green Tree, as the entity that allegedly committed fraud and harassment. Therefore, based on the language of counterclaim itself, Duncan’s claims are not against Conseco, but against Green Tree, and therefore are not barred by the bankruptcy sale. Based on Duncan’s allegations in her counterclaim, dismissal is inappropriate.
VII
The final issue is whether the arbitration clause in the contract bars Dun *640 can’s claims. The lengthy arbitration clause in the contract states “[a]ll claims and controversies arising from or relating to this [e]ontract ... shall be resolved by binding arbitration by one arbitrator selected by Assignee [Green Tree] with consent of the Buyer(s) [Duncan].” It further states that “[t]he parties agree and understand that they choose arbitration instead of litigation to resolve disputes.” In all capital letters, it further states that “THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL EITHER PURSUANT TO ARBITRATION UNDER THIS CLAUSE OR PURSUANT TO A COURT ACTION BY AS-SIGNEE (AS PROVIDED HEREIN).” The court action referenced at the end of the last sentence is authorized later in the clause, stating that “Assignee [Green Tree] retains an option to use judicial or nonjudicial relief to enforce a security agreement relating to the [mobile home] secured by a transaction underlying this arbitration agreement, to enforce the monetary obligation to be secured by the [mobile home] or to foreclose on the [mobile home].” In other words, Duncan agreed to waive her right to file any court action and to instead arbitrate any dispute with Green Tree, and waived her right to a jury completely, but agreed to allow Green Tree to file a court action to repossess the mobile home.
The question is whether such an agreement is enforceable under Navajo law. Green Tree submits that under Navajo law words are sacred. This Court has upheld contracts it* the language is clear and the parties voluntarily entered into the agreement. See, e.g., Smith v. Navajo Nation Dept. of Head Start, No. SC-CV-50-04, 6 Am. Tribal Law 683, 686-87, 2005 WL 6235868 at *2-3 (Nav.Sup.Ct.2005). However, despite the clarity of language, the Court has also stricken agreements if they violate Navajo public policy expressed in our statutory law or in Diñé bi beena-haz’áanii See Allstate Indemnity Co. v. Blackgoat, No. SC-CV-15-01, 6 Am. Tribal 637, 642, 2005 WL 6235869 at *3-4 (Nav.Sup.Ct.2005) (striking liability cap in insurance contract for purposes of prejudgment interest as violative of Navajo principle of nalyééh); see also Smith, No. SC-CV-50-04, 6 Am. Tribal Law at 686-87, 2005 WL 6235868 at *2-3 (stating test).
To discern Navajo public policy, the Court turns first to several provisions of the Navajo Nation Code. One important principle is that contracts are not enforceable if they are “unconscionable.” The clearest articulation of this principle is in Section 2-302(A) of the Navajo Uniform Commercial Code. That provision states that if a court determines whether a contract, or any part of it, is “unconscionable,” it is empowered (1) to refuse enforcement of the entire contract, (2) to enforce the remainder of the contract without the unconscionable clause or clauses, or (3) limit the application of any clause to avoid an unjust result. Id. The basic test is whether, “in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract.” Official Comment, 5A N.N.C. § 2-302 (2005). The concept of uneonscionability “recognizes that in some cases the lack of bargaining power of one party compared to that of the other party will result in an oppressive contract.” Special Plain Language Comment, 5A N.N.C. § 2-302 (2005). Similarly, the Navajo Nation Unfair Consumer Practices Act discusses the concept of “unconscionable trade practice,” which also considers the difference in understanding and bargaining power, and *641 prohibits acts that result in unfair transactions. See 5 N.N.C. § 1103(E) (2005).
The Navajo Nation Code also includes provisions encouraging arbitration. The recently enacted Navajo Nation Arbitration Act authorizes the use of arbitration clauses, but lacks a definition of “arbitration.” See 7 N.N.C. §§ 1001, et seq. Black’s Law Dictionary defines “Arbitration” as, “a method of dispute resolution involving one or more neutral third parties and whose decision is binding.” Black’s Law Dictionary, Seventh Edition, at 100 (1999). The Arbitration Act’s provisions are consistent with this general concept, and through the Act the Council appears to encourage the use of non-judicial dispute resolution as a matter of contract.[1] However, the Act does not recognize all arbitration agreements, as it states that “[a] written agreement to submit any existing or future controversy to arbitration is valid, enforceable and irrevocable, save ■upon such grounds as exist at law or in equity for the revocation of the contract.” 7 N.N.C. § 1103 (2005) (emphasis added). The Act then balances the value of arbitration agreements with the value of fairness, and states that not all agreements to arbitrate are enforceable in the Navajo Nation.
There are also Fundamental Law principles that inform Navajo public policy on arbitration agreements in mobile home contracts. The Navajo maxim of házhó’ógó mandates “more than the mere provision of an English form stating certain rights . .. and requires a patient, respectful discussion ... before a waiver is effective.” Eriacho v. Ramah District Court, No. SC-CV-61-04, 6 Am. Tribal Law 624, 629-30, 2005 WL 6235849 at *3-4 (Nav.Sup.Ct.2005). Házhó’ógó requires a meaningful notice and explanation of a right before a waiver of that right is effective. Id. Házhó’ógó is not man-made law, but rather a fundamental tenet informing us how We must approach each other as individuals. Navajo Nation v. Rodriguez, No. SC-CR-03-04, 5 Am. Tribal Law 473, 478, 2004 WL 5658107 at *5 (Nav.Sup.Ct.2004). It is “an underlying principle in everyday dealings with relatives and other individuals.” Id. Though primarily discussed previously in the criminal context, házhó’ógó equally applies in civil situations. See Kesoli v. Anderson Security Agency, No. SC-CV-01-05, slip op. at 6 (Nav.Sup.Ct. October 12, 2005).
Several other principles are relevant. In a recent case, the Court discussed the Navajo concept of nábináhee-zlágo be t’áá lahj% algha’ deet’q, which is, finality is established when all participants agree that all of the concerns or issues have been comprehensively resolved in the agreement. Casaus v. Dine College, No. SC-CV-48-05, 7 Am. Tribal Law 509, 512-13, 2007 WL 5917128 at *3-4 (Nav.Sup.Ct. 2007). It is also said that in the process of “talking things out,” or meeting the Navajo common law procedural requirement that everything must be talked over, see Navajo Nation v. Crockett, 7 Nav. R. 237, 241 (Nav.Sup.Ct.1996), there is a requirement of ííshjání ádooniíl, that is, making something dear or obvious. See Phillips v. Navajo Housing Authority, No. SC-CV-13-05, 6 Am. Tribal Law 708, 711-12, 2005 WL 6236356 at *3-4 (Nav.Sup.Ct. 2005) (applying Navajo concept of ííshjání ádooniíl to require clear intent to retroactively grant sovereign immunity to Navajo Housing Authority); Yazzie v. Thompson, *642 No. SC-CV-69-04, 6 Am. Tribal Law 672, 674, 2005 WL 6235970 at *2 (Nav.Sup.Ct. 2005) (same for Court rules on fees in domestic violence cases); Rough Rock Community School v. Navajo Nation, 7 Nav. R. 168, 174 (Nav.Sup.Ct.1995) (same for qualifications of school board candidates). Navajo decision-making is practical and pragmatic, and the result of “talking things out” is a clear plan. Rough Rock Community School v. Navajo Nation, 7 Nav. R. 168, 174 (Nav.Sup.Ct.1995). When faced with important matters, it is inappropriate to rush to conclusion or to push a decision without explanation and consideration to those involved. Aádóó na’nile’dii éi dooda, that is, delicate matters and things of importance must not be approached recklessly, carelessly, or with indifference to consequences. Rodriguez, No. SC-CR-03-04, 5 Am. Tribal Law at 478, 2004 WL 5658107 at *5. This is M-zhó’ógó. Id, If things are not done M-zhó’ógó, it is said that it is done t’aa biza-ka.
An arbitration clause must be set in the manner of házhó’ógó (standard of care), so as to make a clause ííshjání ádooniíl (clear and obvious), therefore it will not be made t’aa na’nile’dii (not recklessly, carelessly or with indifference to consequences) resulting in making the arbitration clause nábináheezlágo be t’áá lalvj\ algha’ deet’q (comprehensive agreement). This was shown in Eriarho, wherein the Navajo Nation argued that the explanation of right to a jury trial was not necessary due to Ms. Eriaeho’s apparent education level. See No. SC-CV-61-04, 6 Am. Tribal Law at 630 n. 2, 2005 WL 6235849 at *3-4 n. 2. In response, this Court rejected “any rule that conditions the respectful explanation of rights under Navajo due process on subjective assumption concerning the defendant. This right exists for all defendants in our system.” Id.
Finally, these principles must be applied in the context of the importance of a home in Navajo thought. This Court has noted that a home is not just a dwelling, but a place at the center of Navajo life. Fort Defiance Housing Corp. v. Lowe, No. SC-CV-32-03, 5 Am. Tribal Law 394, 398, 2004 WL 5658062 at *2 (Nav.Sup.Ct.2004). Based on this principle, the Court scrutinizes procedures to make sure they protect a home owner’s ability to maintain a healthy home and family. See id.; Phillips, No. SC-CV-13-05, 6 Am. Tribal Law at 711-12, 2005 WL 6236356 at *3-4.
Considering all of these principles together, the Court holds that the specific arbitration clause in the financing contract is unenforceable. Though arbitration generally is encouraged, clauses that mandate arbitration are not immune from scrutiny for unconseionability or consistency with Fundamental Law. This case ultimately concerns the repossession of a mobile home, and the ability to keep the home may depend on the availability of a home owner’s counterclaims against a finance company seeking to take the home. The requirement that Duncan engage in arbitration instead of filing counterclaims in an action brought by Green Tree in a Navajo district court greatly burdens her ability to defend herself. She must figure out the arbitration process, spend potentially significant amounts of money and travel off the Nation to participate. Importantly, Green Tree is under no similar obligation; under the agreement it may file a Navajo court action to assert its rights, and is protected from defending counterclaims. The burden is then only one way. The effect of this grossly unequal position is not clearly explained in the clause. An arbitration clause in a mobile home finance contract cannot be enforced if the contract does not contain *643 clear and specific language explaining that the Navajo consumer understands that he or she is surrendering his or her rights to bring claims in a Navajo court, but nonetheless is allowing claims against him or her to compel surrender of the home.
Let the parties be clear on the effect of this holding. The Court does not say that all arbitration clauses are unenforceable. Arbitration serves important purposes, and is one of the possible methods of dispute resolution approved by the Navajo Nation Council. The holding of this case only applies to the specific clause under the circumstances of this case.
VIII
Based on the above, the Court VACATES the District Court’s dismissal of Duncan’s counterclaims. The case is REMANDED for further proceedings consistent with this opinion.

. Of course, Peacemaking is another type of non-judicial dispute resolution. However, Peacemaking, unlike arbitration, is based on Navajo principles of non-adversarial decision making that emphasize bringing the parties back into harmony.