DUPRIS, C.J.
Decision made on the briefs without oral argument.
SUMMARY
A temporary custody petition was filed in this matter by a maternal great-aunt[2] of the minor child, M.M. on December 13, 2007. She alleged the minor child was being physically abused by the mother’s boyfriend, FJ. The Tribes’ Children’s Services got involved. On October 14, 2008, the child’s maternal grandmother, Geneva Joseph, filed a request for a restraining order against FJ on the minor’s behalf, alleging FJ was getting out of jail soon and would pose a threat to the child.
On May 26, 2009, the child’s father, Donald Milstead, Appellee herein, filed a Custody Petition, naming the mother, Rose Zavala, Appellant herein, and both Geneva Joseph and the great-aunt as Respondents. Neither Ms. Joseph or the great-aunt have participated in the appellate proceedings, and will not be considered as patties in interest in this opinion.
On July 7, 2009, the Trial Court held the hearing on Appellee’s petition. The maternal grandmother and Appellee appeared. Appellant did not appear nor contact the Court that she would not appear. The Trial Court received evidence on the petition and awarded permanent custody of the child to his father, the appellee, with restricted visitation by the mother, Appellant. She appealed.
Based on the following opinion, we found sufficient evidence to support the Trial Court’s decision; further, we found no due process violation regarding Appellant’s non-appearance, and we affirm the Trial Court.
ISSUES
1) Does the evidence support the Court’s decision to grant custody to the father, Appellee herein?
2) Were Appellant’s due process rights violated because she did not participate in the hearing in which custody was decided?
*197 STANDARD OF REVIEW
Normally we review findings of fact under the clearly erroneous standard, and errors of law de novo. Colville Confederated Tribes v. Naff, 2 CCAR 50, 2 CTCR 08, 22 ILR 6032 (1995). The second issue regarding an alleged due process violation will be reviewed de novo. As for the first issue, in an earlier ruling in this case we found that we would review the findings of fact de novo, too. We stated:
We have little direction of what facts were found. The findings are more of a record of what evidence and arguments were presented to the trial court instead of how the trial court analyzed and weighed the evidence, thereby coming to a final, relevant fact. What we have to review, then, is a judicial summary of the evidence and arguments presented at the custody hearing from which we must determine the facts de novo since, in essence, no reviewable facts are provided by the trial court in its findings.
Zavala v. Milstead, 10 CCAR 14, 5 CTCR 22, 36 ILR 6101 (2009) (footnote omitted).
DISCUSSION

I. Does the evidence support the Court’s decision to grant custody to the father, Appellee herein?

1) Review of the Findings of Fact and Conclusions of Law
The Trial Court entered over sixty Findings of Fact.[3] We reviewed these “findings,” or what we term judicial summaries of the evidence presented at the hearing, against the requirements of CTC § 5-1-121, Child Custody-Relevant Factors in Awarding Custody. This Code provision states that the Trial Court is to first consider the best interests of the child, and secondly traditions and custom. It requires the Trial Court to consider all relevant factors, including six (6) specific factors, in making its decision. CTC § 5-1-120.[4] We also review whether the Trial Court had personal and subject matter jurisdiction.
2) Jurisdiction and Notice
There are three petitioners in this matter: the maternal grandmother, who is a member of the Colville Tribes and resides on the Reservation; the mother, who is a member of the Colville Tribes and resides on the Reservation; and the father, who is a non-Indian residing off the Reservation in Oregon. The child is a member of the Colville Tribes, and, at the initiation of the action by the maternal great-aunt, resided on the Reservation. The only non-tribal member is the father. He filed his own petition for custody, thereby consenting to the jurisdiction of the Court. CTC §§ 1-430 and 1-1^31. The Trial Court had personal jurisdiction over all the parties. Further, the Court has subject matter jurisdiction over the case. CTC § 2-2-1.
All parties except Appellant appeared for the custody hearing. The Court found on record that all parties, including Appel *198 lant, received notice. Although the Judge did not put this finding in writing, the uncontroverted evidence indicates Appellant’s mother, one of the Petitioner’s herein, testified she left her car for Appellant specifically so Appellant could drive to the hearing, and that Appellant did know about the hearing. We find adequate notice was provided.
3) Six Factors to Consider in A warding Custody
The minimum evidence needed to prove the allegations in the Petition rests on the six factors to be included in any review by the Court. The evidence presented at the custody hearing was uncon-troverted. The following is a summation of the evidence reviewed by this Court.
(a) Wishes of parents regarding visitation: Appellant has denied Appellee visitation over the last year. She has turned her phone services off, has no transportation, and is not easily accessible. There is nothing in the evidence regarding what visitation parameters Appellee wants regarding visitation between the child and his mother. There is sufficient evidence to show Appellant makes it difficult for Ap-pellee to initiate any visitation rights with the child.
(b) Wishes of child regarding custodian and visitation: There is no specific evidence of the wishes of the child; however, the evidence shows the chUd is afraid of Appellant’s boyfriend, who has been physically abusive to both the child and his mother. Further, the evidence shows the child is calmer and happier with his father, and is in a safer environment.
(c) Interaction with others: Appellant continues a relationship with FJ, who is physically and mentally abusive of both the child and Appellant. There is no evidence of other children in Appellant’s home. The child interacts well with his paternal grandparents; gets along with Appellee’s significant other; and has a half-sibling he interacts with when with Appellee. The maternal grandmother, one of the petitioner’s at the trial level, testified she turned FJ in when he abused the child, and she is available to provide a home for the child if Appellant did not get custody.
(d) Child’s adjustment to home, school, and community: The Court made extensive summaries of the child’s ongoing problems in school while with his mother and her abusive boyfriend. The evidence further shows that the child is doing well in school with Appellee, and has adjusted to life with Appellee. Appellee is never behind in rent, always has food, has a driver’s license, car and insurance.
(e) Mental and physical health of all involved: Appellant is in a violent relationship with FJ; there is no evidence specifically regarding her mental or physical health in the judicial summaries. Appellee testified he was diagnosed as borderline bi-polar and takes medication for this condition. He further testified he will continue the child’s mental health counseling.
(f) Indian heritage of Child: The child, Appellant, and Appellant’s mother are members of the Tribes. No other evidence was submitted on how their cultural ties were maintained. Appellee, a non-Indian, testified he would maintain the child’s cultural education. He goes to local pow wows and events at Chemawa Indian School, and would continue to go, and take the child with him.
Our review of the evidence supports the Trial Court’s decision that awarding custody to Appellee is in the best interests of the minor child. We affirm.

II. Were Appellant’s due process rights violated because she did not participate in the hearing in which custody was decided?

The short answer is no. Due process guarantees a party the right to *199 participate, it does not mandate that the Court never have a hearing unless and until a party avails himself of the opportunity to participate. The Court found on record that Appellant did receive notice. Further, Appellant’s mother testified she lent her car to Appellant so that she could attend the hearing. Appellant’s position is that the Court should have, at a minimum, called Appellant to see why she wasn’t there. This argument is not based on any law or other legal authority. The only case Appellant cited in support of her position is Miles v. Chinle Family Court, 7 Am. Tribal Law 608 (Navajo 2008). Even if we were persuaded to follow Navajo case law, which we aren’t at this time, Miles is not apposite to the holdings herein. As Appellant points out, it says the Court shouldn’t remove a child without the opportunity for a parent to respond to the petition. Appellant had an opportunity to respond. She chose not to take the opportunity. She did not exercise her right to participate and cannot now put the onus on the Trial Court to ensure her participation. We find Appellant did not sustain her burden on this argument.
Based on the foregoing, now therefore,
It is ORDERED that the Trial Court Order of August 20, 2009, awarding custody of the minor child herein to Appellee, Don Milstead, is AFFIRMED and the appeal regarding due process violations is DENIED and hereby DISMISSED. This matter is remanded to the Trial Court for Orders in conformance with our decision.

. It appears the maternal great-aunt did not participate as a party in the rest of the proceedings, and has not appeared in the Appeal. For the purposes of the Appeal she will not be included in the opinion.

. Although the Trial Court designated only 37 findings, several of them had long paragraphs with many facts alleged in them. For example, finding # 10 had twelve paragraphs summarizing Appellee’s testimony, and then twenty-four (24) alphabetized paragraphs setting out what the school reports entered into evidence said about the minor’s behavior and attendance.

. (a) The wishes of the child; (b) The wishes of the child’s parent or parents as to visitation privileges; (c) The interaction and interrelationship of the child with his or her parent or parents, his or her siblings, and any other person who may significantly affect the child's best interests; (d) The child’s adjustment to his or her home, school, and community; (e) The mental and physical health of all individuals involved; and (0 The Indian heritage of the child.